## QUINN v. SOUTH CAROLINA RAILWAY COMPANY.

1. What facts constitute negligence is for the jury; and therefore the judge properly refused to charge that a given state of facts would make a case of contributory negligence.

2. The judge being requested to charge "that plaintiff could not recover exemplary damages in this case unless the jury find that the injury inflicted was caused by the wilful negligence of the company's servants, authorized or approved by the company, and showing criminal and reckless misconduct on the part of the company," said: "The plaintiff cannot recover exemplary damages in this case unless the jury find that the injury was caused by the malicious, oppressive, or reckless negligence of the company's servants." *Held*, that in this there was no error.

3. The trial judge properly refused to charge "that no evidence of wilful misconduct having been offered by plaintiff, the jury cannot find exemplary damages," for there may be exemplary damages where there is no wilful misconduct, and besides, it would have been a charge on the

facts. He did not err in leaving to the jury the whole matter of damages.

4. Courts are more reluctant to grant new trials for excessive damages in actions for personal injury than in any other class of cases.

Before FRASER, J., Charleston, July, 1887.

This was an action by Thomas Quinn against the South Carolina Railway Company, to recover forty thousand dollars damages, under the facts stated in the opinion. The charge to the jury consisted of the requests to charge and the remarks of the judge thereon, but excepting those stated in the opinion, they are not necessary to a proper understanding of the points decided.

*Messrs. Brawley & Barnwell,* for appellant.

*Messrs. Bryan & Bryan,* contra.

October 11, 1888. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This was an action against the defendant company to recover damages for a personal injury. The plaintiff complained "that on October 5, 1886, the defendant received the plaintiff into one of their passenger cars for the purpose of conveying him therein and upon said railroad as a passenger, from the city of Augusta, Georgia, to Charleston for fare paid by the plaintiff to the defendant. That on October 6, 1886, while the plaintiff was in such car on said railroad, being so conveyed near the depot of the said railway company at Charleston, a collision occurred on said railroad, caused by the negligence of the defendants and their servants, by which said car was struck and the plaintiff was greatly injured, wounded, and bruised, and otherwise hurt and damaged in his person, &c., to the damage of him, the said plaintiff, forty thousand dollars," &c. The defendant put in a general denial, and "admits that plaintiff received certain injuries while sitting in one of the passenger coaches or cars of the defendant; but this defendant says that such injuries would not have been received but for the negligence of the plaintiff in placing himself in a position in which his arm extended from the window in said car, so as to come in

contact with another train of defendant, colliding with the car in which plaintiff was sitting," &c.

The cause came on to be heard before Judge Fraser and a jury. There was a great mass of testimony, which is all printed in the Brief, but it is believed that the following brief statement of the defendant's attorney, will sufficiently indicate the points of law to be determined by this court: "On the morning of October the 6th, Thomas Quinn, the plaintiff, was a passenger on the night mixed freight and passenger train from Augusta to Charleston. He was riding in the smoking car, called in the testimony 'Combined Car No. 7.' The train arrived in the station yard about six o'clock, but before daylight. It stopped at the switch just before entering the passenger station, and the freight cars and engine were uncoupled from the combined car. The freight cars went forward about thirty feet on the track, called the 'Summerville track,' outside of the station and to the east of it, and stopped. A yard engine, called a 'switch engine,' then coupled on behind the passenger coaches, drew them back to get them clear of the 'frog,' or 'switch,' and was signalled to stop, and then came back and pushed the passenger coaches into the station. Thomas F. Purse, an engineer of experience, in charge of the engine and freight cars, which had been stopped on the Summerville track, understood the signal given to the switch engine to come back, to mean that he must back his engine and freight cars, and he slowly backed, felt a jar as though he had coupled a car, was signalled to stop, and did so, and then drew forward, &c. The jar felt by Purse was a collision between 'stock car 31,' the last car of the freight part of the train, and the smoking or combined freight and passenger car, in which Quinn was sitting, the foremost car of the passenger part of the train. As the passenger cars moved south, the eastern side of the combined car struck the western edge of the stock car moving north, and injured Quinn, who was seated at the open window on the eastern side of the smoking car, with his left arm on the window sill, and his head turned away from the window, while he was talking to a friend sitting behind him. Quinn's witnesses think his elbow was on the inside of the window, and the wit-

nesses for the defence on the outside. Quinn's arm was so much injured that amputation above the elbow was necessary," &c.

Both the plaintiff and defendant made requests to charge, some of which were charged, some modified, and others refused. But it will not be necessary to incumber this opinion by setting out any but those to which there are exceptions. Upon the charge of the judge the jury found for the plaintiff $8,500, and the defendant company appeals to this court upon the following exceptions:

"First. Because it is submitted that his honor erred in refusing to charge, as requested by defendant, that if the jury find from the evidence, that plaintiff, Quinn, was riding in the car of the company, with his elbow, at the time of the accident, projecting out of the window of the car, by reason of which he sustained an injury, then plaintiff is *prima facie* guilty of contributory negligence.

"Second. That his honor erred in refusing to charge, as requested by defendant, that if the jury find from the evidence that plaintiff, Quinn, was riding in the car of defendant company, with his elbow at the time of the accident projecting out of the window of the car, by reason of which he sustained an injury, he was guilty of a want of due care.

"Third. That his honor erred in refusing to charge, as requested by defendant, that plaintiff could not recover exemplary damages in this case, unless the jury find that the injury inflicted was caused by the wilful negligence of the company's servants, authorized or approved by the company, and showing criminal and reckless misconduct on the part of the company.

"Fourth. That his honor erred in refusing to charge, as requested by the defendant, that no evidence of wilful misconduct having been offered by plaintiff, the jury could not find exemplary damages."

The first and second exceptions will be considered together, as they substantially make the same point—one insisting that it was error to refuse to charge that if Quinn was riding in the car with his elbow projecting out of the window, "then plaintiff was *prima facie* guilty of contributory negligence;" and the other, that by such conduct "he was guilty of a want of due care, and cannot

recover." In refusing these requests, the judge said: "As I understand the constitution of this State, I cannot instruct you upon matters of fact. What facts constitute negligence is for you. I cannot pick out any number of facts, and say to you, that from these you may infer negligence. I think that is your province, gentlemen of the jury, and not mine * * *; that request is equivalent to giving my opinion, and I cannot do it. It is a question for you, and not for me."

Under our cases, we cannot say that this was error of law. We do not think it is necessary to do more than cite the rule as stated in the case of *Bridger* v. *Railroad Company*, 25 S. C., 30: "The judge is required to charge the law, and the jury to find the facts. The law, however, does not state what facts proved will show the absence of ordinary care. It could not do so as applicable to every case which arises. The cases involving this question are so different in their facts, so various, so complicated, and arising under so many different circumstances, that it would be utterly impossible to lay down any general principle of law by which every special case could be measured and tested as to the fact of negligence, and which would enable a judge to say to the jury, as matter of law, such and such facts showed the absence or presence of ordinary care. The general rule on the subject seems to be, that the charge of the judge must simply be that negligence is the absence of ordinary care, and the jury must determine whether the facts proved before them amount to negligence. They must determine what facts have been proved, and then say by their verdict whether these facts amount to the absence of such care, &c." [1]  See *Carter* v. *C. & G. R. R. Co.*, 19 S. C., 29; *Crouch* v. *C. & G. R. R. Co.*, 21 *Id.*, 495; and *Kaminitsky* v. *Railroad Company*, 25 *Id.*, 59.

*Exception third.* "That his honor erred in refusing to charge, as requested by defendant, that plaintiff could not recover exemplary damages in this case unless the jury find that the injury inflicted was caused by the wilful negligence of the company's servants, authorized or approved by the company, and showing criminal and reckless misconduct on the part of the company."

[1] See, too, *Petrie* v. *Columbia & Greenville Railroad Company*, ante 303.—REPORTER.

In this form the request was not charged. The court, however, did charge it in modified form, as follows: "The plaintiff cannot recover exemplary damages in this case, unless the jury find that the injury was caused by the malicious, oppressive, or reckless negligence of the company's servants. Now, these exemplary damages are sometimes called punitive damages, and sometimes vindictive damages. They are damages, which the jury is authorized to give over and above the money value they put on the plaintiff's injury, by reason of some misconduct on the part of the defendant, and which the jury is authorized to give, so as to teach the defendant to behave better in the future. This class of damages is not only for the protection of the plaintiff, but also of the public," &c.

Was this error? It seems that the question as to the responsibility of corporations in exemplary damages, for the misconduct of their employees, has never been much discussed in this State; but we regard, at least, the general principle, in cases of a particular character, as settled by *Palmer* v. *Railroad Company*, 3 S. C., 583, and *Hall* v. *Railroad Company*, 28 *Id.*, 261. In the case of Palmer the court held: "A corporation may be made to respond in exemplary damages for the misconduct of its agents, as, for instance, a railroad corporation for the misconduct of a conductor in ejecting a passenger from the train." This certainly is in conformity to the generally received doctrine, as stated by all the elementary writers, and reported in numerous decided cases in other States. Without undertaking to cite the cases brought to our attention by the argument, it may suffice to state the rule as laid down by "Sutherland on Damages": "If a corporation like a railroad company is guilty of an act or default, such as in the case of an individual would subject him to exemplary damages, they would be equally liable to such damages. And when the servants of a corporation, engaged in the carriage of passengers, are guilty of such acts or conduct in the performance of their duties in the transportation of the injured party as a passenger as would subject them to damages of this nature, the corporation is also liable to punitive damages, without proof that they directed or ratified such acts or conduct. As the corporation can only act through natural persons, its officers and ser-

vants, and as it, of necessity, commits its trains or vehicles abso-lutely to the charge of persons of its own appointment, passen-gers of necessity commit to them their safety and comfort *in transitu,* the whole power and authority of the corporation *pro hac vice* is vested in such employees: and as to such passengers, they are the corporation." 3 *Suth. Dam.*, 271.

But it is insisted that the judge erred in not limiting the liability to cases in which "the injury inflicted was caused by the wilful negligence of the company's servants, authorized or ap-proved by the company, and showing criminal and reckless mis-conduct on the part of the company." If this were the rule, we may safely say that few, if any, railroad companies would ever be made liable, for surely there is no company in this enlightened age, which would authorize in advance, or, after the act, approve, any wilful negligence of their employees, by which personal injury was inflicted on their passengers. The principle is well established that when an agent is employed to do the work of the master, he is the representative of the master, and any negli-gence on his part in the performance of the duty of the master thus delegated to him, must be regarded as the negligence of the master. *Gunter* v. *Graniteville Man. Co.*, 18 S. C., 270. In the case of *Palmer* v. *R. R. Co.*, *supra*, the Circuit Judge said: "I charge you that there may have been no wilful design on the part of this corporation, or any of its agents, to injure the plain-tiffs, nevertheless you may find exemplary damages." The judg-ment was affirmed.

In *State* v. *Morris & Essex R. R. Co.*, 23 N. J. (3 Zab.), 369, it was said that "if a corporation has itself no hands with which to strike, it may employ the hands of others; and it is now per-fectly well settled, contrary to the ancient authorities, that a cor-poration is liable *civiliter* for all *torts* committed by its servants or agents by authority of the corporation, express or implied * * * The result of the modern cases is, that a corporation is liable *civiliter* for torts committed by its servants or agents pre-cisely as a natural person; and that it is liable as a natural per-son for the acts of its agents done by its authority express or implied, though there be neither a written appointment under seal nor a vote of the corporation constituting the agency or

authorizing the act," &c.    Mr. Thompson, in his work on "Carriers of Passengers," says :  "The rule which is in accord with reason, and the weight of authority is, that passenger carriers, although corporations, may be liable in a proper case, in exemplary damages for injuries to passengers carried by their agents, without direct authorization or subsequent ratification of the act complained of."  Mr. Peirce, in his work on Railroads (315), says: "Although compensation for the injury is the usual measure of damages, other damages in addition have been allowed, when the author of the injury committed it maliciously, wilfully, or even recklessly, or, according to some authorities, with gross carelessness.    Such supplemental damages are called exemplary," &c.

We think there was no error in the judge refusing to charge the proposition as a whole submitted by the defendant.

*Exception four.*  "Because the judge refused to charge, as requested by the defendant, 'that no evidence of wilful misconduct having been offered by plaintiff, the jury cannot find exemplary damages.'"    The judge said :  "I prefer not to charge you the fourth proposition.    If I read it and refuse it, it might convey a wrong impression.    I prefer not to read the other propositions asked for the defendants, and to let the case go to the jury as it is."    In the view which the judge took, it was considerate to pass over the request in silence.    He could not charge the whole proposition as good law, for we have just endeavored to show that there may be exemplary damages, when there is no "wilful misconduct."  Besides, the request asked the judge to charge upon the facts, which, in itself, would have been error.    The defendant insists, however, that it was a question for the court to decide, whether any evidence was offered justifying exemplary damages. We do not know certainly what was the view of the judge.    He might not have been clear that there was no such recklessness or gross negligence as authorized exemplary damages.    We can not say that the judge erred in leaving to the jury the whole subject of damages.    The action was one sounding in damages, and peculiarly for the jury.    Courts are more reluctant to grant new trials for excessive damages in actions for personal injury than in any other class of cases.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.