MILLER v. SOUTHERN RY.

1. RAILROADS—PASSENGERS—NONSUIT.—Proof that a train was due to leave a station twenty minutes late, did so leave, but after moving about 100 yards returned to depot, and there remained ten hours without any information to passengers as to cause of delay or duration, prevents nonsuit in suit by passenger for failure to carry.

2. CHARGE.—Under facts here request that defendant was not liable for punitive damages would have been a charge on the force of evidence.

3. EXCEPTION referring to another for specifications of error not considered.

4. RAILROADS—PASSENGERS—DAMAGES.—CHARGE as to duty of railroad company to run its trains on schedule time and liability to passenger for failure to do so, and as to actual, nominal and punitive damages in cases where no actual damages are shown and no special damages alleged, held correct.

5. NEW TRIAL.—Refusal of trial Judge to grant new trial for insufficiency of evidence, will not be inquired into here.

Before PURDY, J., Greenville, April, 1903.    Affirmed.

Action by H. W. Miller against Southern Railway. From judgment for plaintiff, defendant appeals.

*Mr. T. P. Cothran,* for appellant, cites : *Delay does not entitle passengers to actual damages without proof of loss:* 10 S. E. R., 960 ; *Aaron v. Ry.,* 67 S. C.,; 28 S. C., 157 ; 40 S. C., 524. · *Punitive damages should not be awarded for gross negligence:* 60 S. C., 74.

· *Mr. Lewis Dorroh,* contra, cites : *Failure to carry passenger entitles him to damages:* 64 S. C., 423 ; 66 Am. Dec., 600 ; 52 Miss., 77 ; 53 S. C., 213 ; 8 Ency., 551 ; 62 S. C., 231. *There being evidence of any sort of negligence case must go to jury:* 65 S. C., 99 ; Thomp. on Car., 209 ; 67 Am. Dec., 679 ; 62 S. C., 137 ; 12 Ency., 30 ; 53 S. C., 210.

April 29, 1904. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. On the 7th day of November, 1902, the plaintiff, residing in the city of Greenville, was in the city of Spartanburg on business, and at night applied to the local agent of the defendant in Spartanburg for a ticket on train No. 35, to go to Greenville. The said local agent informed the plaintiff that train No. 35 was twenty minutes late, but sold him a ticket. This train, No. 35, was a through passenger train from Spartanburg to Greenville—a distance of about thirty miles. Said train arrived about twenty minutes late, and the plaintiff with a goodly number of other passengers got on board, when said train moved about 100 yards towards Greenville and then stopped, and so remained until next morning about 10.30 o'clock, after which it proceeded to Greenville, reaching the latter about 11.10 o'clock. The plaintiff applied to the conductor twice to know when the train would start and received no definite information, and when he applied to the conductor to know if the passengers could not be transferred to another train which could take the passengers on to Greenville, the conductor replied that they had no such orders. He then asked such conductor if the train upon which he and other passengers were seated, could not be sent on to Greenville by way

of Laurens, and the conductor replied that he had no such orders. The plaintiff's anxiety to reach Greenville was because he was state superintendent of an insurance company, for which he had important business engagements for the next morning. He reached Greenville, but found that his business engagements could not be and were not attended to—owing to his failure to reach Greenville on time. The plaintiff brought his action against the defendant to recover his damages, which he fixed at $500.

Inasmuch as the defendant demurred to the complaint, it is necessary that such complaint shall be set out. It was as follows, omitting its caption and opening words:

"1. That Southern Railway Company, defendant, was at the time hereinafter mentioned and still is a corporation created under the laws of the State of Virginia, and as such has power to sue and to be sued, and is a common carrier, and is engaged in carrying passengers in railway trains for hire from point to point along certain railway lines in South Carolina, among other lines, that passing through the city of Spartanburg.

"2. That before and at the time herein named, defendant operated its trains by a schedule, according to which its train No. 35 left Spartanburg at the hour of 12.20 a. m., and arrived at Greenville at the hour of 1.20 a. m.; that said train had been so run for a long time, and the fact was a matter of common knowledge, and defendant published said schedule in newspapers and posted said schedule on bulletin boards at its stations, and otherwise advertised said schedule.

"3. That November 7, 1902, plaintiff, who lives in Greenville, was in Spartanburg, and desiring to return to Greenville, and relying upon defendant's said schdule, he presented himself at the ticket office in defendant's depot in Spartanburg for the purpose of securing passage to Greenville on train No. 35.

"4. That plaintiff was then and there informed by defendant's servant and agent, the ticket agent in said ticket office, that train No. 35 would arrive twenty minutes late, and

would leave for Greenville twenty minutes after the hour of 12.20, its schedule time.

"5. That, relying upon said ticket agent's statement, plaintiff then purchased from said ticket agent a ticket for Greenville, and upon the arrival of said train No. 35 a few minutes later, entered one of the cars of said train No. 35 as a passenger.

"6. That said train No. 35, with plaintiff and others as passengers, did not leave for Greenville at twenty minutes after the hour of 12.20, its schedule time, but by reason of defendant's carelessness, wantonness, recklessness and negligence, and its disregard of the duty it owed to its passengers and to the public, said train was made or permitted to lie in the depot at Spartanburg for ten hours or more, leaving at last between the hours of 10 a. m. and 11 a. m., and arriving at Greenville at the hour of 11.10 a. m.

"7. That while said train No. 35 lay in the depot at Spartanburg, as stated, plaintiff repeatedly asked defendant's servant and agent, the conductor of said train No. 35, when said train would leave, but said conductor wantonly and recklessly refused to give any information in answer to said request, leaving plaintiff in ignorance as to when said train would start for Greenville, and not knowing but what it would start at any minute, and thereby requiring him to remain in the depot at Spartanburg, prepared and ready to leave the whole of the ten hours or more that said train lay in said depot.

"8. That by reason of said train's delay, caused as aforesaid, and by reason of being required to wait so long at said depot at Spartanburg, caused as aforesaid, plaintiff missed an important engagement in his office in Greenville, and suffered great annoyance, anxiety, inconvenence and discomfort, and arrived at his office in Greenville too late to attend to his regular morning's work and too tired to do any work, all to his damage five hundred dollars.

"Wherefore, plaintiff prays judgment against defendant

for the sum of five hundred dollars and the costs of this action."

The defendant demurred to the complaint herein upon the ground that it does not state facts sufficient to constitute a cause of action.

"Specifications: 1. The claim for punitive damages cannot be sustained, for the reason that no actual injury is alleged to have been inflicted on or suffered by plaintiff. *Watts* v. *Ry.,* 60 S. C., 72.

"2. The claim for actual damages cannot be sustained for the reason that none are alleged; the statement that plaintiff missed an important engagement and suffered great annoyance, anxiety, inconvenience and discomfort, is too remote, uncertain and speculative. *Martin* v. *Ry.,* 10 S. E. R., 960; *R. Co.* v. *Hayden,* 15 Am. R., 274.

"3. No notice to defendant of any special damage claimed is alleged. *Moore* v. *Tel. Co.,* 40 S. C."

The Circuit Judge, Judge Purdy, passed the following order overruling the demurrer:

"On the call of this case for trial, the defendant interposed a demurrer to the complaint, upon the ground that it did not state facts sufficient to constitute a cause of action, and submitted specifications of the grounds in writing. As these specifications are in the record, it will be unnecessary to set them forth here.

"The plaintiff resided in Greenville, and had occasion to visit Spartanburg on business, leaving Greenville in the early evening, expecting to leave Spartanburg at 12.20 at night. He alleges in his complaint that the defendant had advertised that its train left Spartanburg at 12.20 at night, and that this fact was known to the public generally as well as to himself, and that in addition to relying upon this statement, he asked the ticket agent at Spartanburg concerning this train, and was informed that the train was twenty minutes late, and thereupon he purchased a ticket for Greenville. He further alleges that the train came in at the time stated by the agent, and that he went aboard of same, but that defendant either

held or permitted the train to remain in the depot till 10 o'clock next morning, without giving him any reason or explanation for so doing; and he charges that this was carelessly, recklessly, wantonly and negligently done, in utter disregard of plaintiff's rights and the defendant's duty to the public.

"The complaint further charges that by reason of the premises, the plaintiff was obliged to remain in the depot all night without sleep, to his great annoyance and inconvenience, and that he arrived home too late to attend to his regular morning's work, and too much fatigued to attend to any business, and besides missed an important engagement, and concludes by demanding $500 damages.

"The demurrer cannot be sustained.

"While the facts set out in the complaint allege breach of contract, they at the same time show a breach of duty to the public amounting to a tort (*Heirn* v. *McCaughan,* 66 Am. Dec., 600; *Memphis & Charleston Railroad Co.* v. *Green,* 52 Miss., 779; *Butler* v. *Telegraph Company,* 62 S. C., 222), and from the nature of the act damages are implied (8 A. & E. Ency. of Law, 551). A cause of action is alleged for punitive damages, and if the facts alleged can be proved, punitive damages may be awarded (*Gilman* v. *F. C. & P. R. R.,* 53 S. C., 210; *Fort* v. *Southern Railway Co.,* 64 S. C., 423).

"It is, therefore, ordered, that the demurrer be, and the same is hereby, overruled."

The defendant thereupon filed its answer, wherein it denied all the allegations of the complaint. The case then went to trial. The defendant then admitted the allegations of paragraphs one and two of the complaint.

The plaintiff then introduced his testimony. At its conclusion the defendant moved for a nonsuit on the following grounds:

"1. The claim for punitive damages cannot be allowed, for the reason that there is no evidence tending to show any actual damage. *Watts* v. *R. Ry.,* 60 S. C., 72.

"2. There is no evidence tending to show such conduct on defendant's part as will justify the allowance of exemplary damages.    *Fort* v. *Ry.,* 64 S. C., 423.

"3. There is no evidence tending to show any actual damages, the proximate result of defendant's alleged negligence.

"4. The evidence fails to show any unreasonable delay on defendant's part which would be the basis of a recovery for damages.

"5. The evidence fails to show that the delay was due to the negligence of defendant.    2 Wood, 313.

"6. The evidence does not tend to show that the defendant had notice of the special damage claimed.

"7. The evidence does not show any actual pecuniary damage sustained by plaintiff.    *Wood* v. *Tel. Co.,* 40 S. C., 524; 51 Am. R., 274."

The Circuit Judge denied the motion in the following order:

"As to what may be dependent on the part of the defendant by way of an excuse by not carrying out the contract, if the plaintiff has not made a contract, I cannot anticipate. It may have a perfect defense to the alleged violation of the contract.    It is a question of fact for the jury, and I don't think that I would be warranted in granting a nonsuit.    It is a question of fact for the jury, and the railroad company may be able to prove it.

"By counsel for defense: Your Honor didn't rule on the special damage.    They have not proved any wilfulness and wantonness in their testimony.    We make the point here in the motion for a nonsuit, that they have offered no testimony as to wilfulness and wantonness, and when it comes to actual damage or ordinary negligence, that there is no testimony by which the jury could ascertain how much the man was damaged.

"By the Court: Under the act of the legislature, I think it is their intention to recover either actual or exemplary damage in a case of this kind, or, in fact, all cases suing in tort.    What proof might be offered, I don't think there is

any doubt but that the case of *Fort* v. *Railroad* states clearly that the case would be in the discretion of the Court. It seems to me that it would be a question of fact for the jury to say whether or not there was any wilfulness and wantonness violative of the contract to bring the plaintiff to Greenville, or any negligence of duty in keeping the party in there until 10 o'clock the next morning, and I think it is incumbent on the defendant to show, and I think punitive or actual damage can be recovered."

Counsel for plaintiff made the following statement: "Counsel for plaintiff admits that he claimed no special damages and no pecuniary loss, but he claimed that the delay itself, with the consequent annoyance, anxiety, inconvenience, discomfort and fatigue, was a wrong entitling him to actual damages, and that the conduct of the defendant in the whole matter, with the consequent annoyance, anxiety, inconvenience, discomfort and fatigue, warranted an award of exemplary damages."

The defendant offered no testimony.

The following is the charge to the jury by Circuit Judge: "The plaintiff, complaining, alleges that he entered into a contract with the defendant, acting as a common carrier, to transport him from Spartanburg to Greenville, and that he was greatly delayed in reaching that point, and he alleges, that the act done by the defendant was wanton and wilful, and in disregard of his right. The charge is that the defendant failed to discharge its duty to him, to his damage in the sum of five hundred dollars; and if you find for the plaintiff, you cannot find a verdict exceeding that amount. There is no charge of what is called 'special damage.' To illustrate: Where a person is injured, and he suffers any special damage from the injury, by reason of the injury, as a part of the damage, he can set out the particulars in which he was damaged. As an illustration: a man might say I was getting ten dollars per day, and I was prevented from performing that duty by reason of another person not doing his duty to me. In this case, they don't claim any special damage,

and any special damage that the plaintiff might have sustained by missing any engagement, was ruled out and is not before you, and is not to be considered by you. There is one kind of damages known in law as 'Damage Implied,' from the unlawful act of another. Unless there is proof of some substantial damage, you can only give nominal damages, where there is some unlawful act. A common carrier owes a duty to the public, and the violation of that duty is such an act as will support the damages, as damages resulting to the one who had a contract with the defendant, if that contract has been violated.

"The plaintiff requests me to charge you the following propositions of law:

" '1. The published schedules or time tables of a railway company are the representations to the public as to the time of departure of its trains and of the periods within which their journeys will be performed. They are public professions up to which it must use diligence to act, and if it fail to perform its trips according to them, it will be liable to the passenger, unless it shows that it has made reasonable exertions to do so, and has been prevented by accidents and delays not attributable to its negligence.'

Modification: And in order to exempt itself from liability it must show that it exercised due care to prevent the delay.

" '2. A railway company is chargeable with damages for delay in running its trains according to schedule time, and nothing but accidents resulting from causes which reasonable care could not have provided against, will excuse liability to the passenger for damages. If the conduct of the railway company is such as to show a wanton or wilful disregard of duty to such passenger, exemplary, or punitive, damages may be awarded.

" '3. Wilful acts for which exemplary damages may be awarded, may be shown by evidence of the recklessly omitting or neglecting to do something, the failure to do which shows gross or utter disregard.

" '4. Exemplary or punitive damages are awarded as a

punishment to a wrong doer, and as an example and warning to the wrong doer and others.

" '5. The neglect of a railway company to run its train according to its schedule may be in itself an unlawful act. When an act which is in itself unlawful, is committed, the law will presume that damages follow as a necessary consequence thereof, and no special damages need be proven.

" '6. When a railway company has failed to carry a passenger to his destination by the time fixed in its published schedule, the burden is upon the railway company to prove that it has made every proper effort to prevent the delay. If it fail to prove this, it will be liable to the passenger for damages.

" '7. Where a railway train is delayed by an obstruction on the track, the law presumes that the obstruction on the track is caused by the fault of the railway company, and the burden is upon the railway company to prove that the obstruction on the track was caused by inevitable accident or other causes which could not have been prevented by due care and foresight. If it fail to prove this, it will be liable to the passenger for damages.

" '8. Where a delay happens from the breaking down of any of the cars, engines, roadway or other appliances or equipments under the control of the railway company, or is caused by the mismanagement or misconstruction of something over which the railway company has control, the law presumes that the same was caused by the negligence of the railway company, and the burden is upon the railway company to disprove this presumption, and if it fail to disprove, it will be liable to the passenger for damages, if damages result therefrom to a passenger.

" '9. A railway company is bound by the representations of its ticket agent to the purchaser of a ticket, provided the representations were made at the time of the sale of the ticket.' Charged.

"The defendant requests me to charge you the following propositions of law:

" '1. The plaintiff is not entitled to punitive damages unless the defendant's conduct was wilful, malicious, wanton, or so reckless as to evince an utter disregard of the plaintiff's rights.

" '2. The plaintiff in this case has adduced no facts from which the jury could conclude that the alleged conduct of the defendant was wilful, malicious, wanton, or so reckless as to evince an utter disregard of the plaintiff's rights.

" '3. The jury is instructed that, under the testimony in this case, the defendant is not liable for punitive damages.

" '4. The plaintiff is not entitled to actual damages unless the defendant's conduct was wilful or negligent.

" '5. The plaintiff is not entitled to actual damages unless he has established some pecuniary damages or some personal injury resulting in loss.

" '6. The plaintiff in this case has adduced no testimony tending to show that he has sustained any pecuniary damage or personal injury resulting in loss.

" '7. In the absence of direct proof of substantial damages as the result of breach of contract or tort, the damages implied by law can be only nominal.

" '8. Plaintiff is not entitled to damages for inconvenience, loss of time and fatigue, unless it has produced some pecuniary damage or personal injury resulting in some actual loss.'   Second and third requests refused, and the others charged.

"Now, Mr. Foreman and gentlemen: As I said before, in a case of an unlawful act, the law implies some damage, but without some substantial damage, such damage can only be nominal, and what the amount would be is a question of fact for the jury to conclude from the testimony brought out on the stand.   There are two kinds of damages—actual damage, damage for the actual injury sustained, and punitive damage.   Now, suppose a person would come and take your horse from the stable, and the horse was worth one hundred dollars, you would sustain a damage of one hundred dollars, that would be your actual damage and what you

would be injured; and if the act was committed wantonly, wilfully and recklessly, and in utter disregard of the plaintiffs' right, the jury can give punitive damages; but if it was not done wilfully, wantonly and recklessly, and in disregard of the. rights of another, there can be no punitive damages. There must be wilfulness, wantonness, recklessness, and utter disregard of the rights of the other person, before the party that inflicted the injuries can suffer damages by way of punishment.

"If the defendant did an unlawful act towards the plaintiff, if it has, then damages would be implied, giving the necessary damages as the result of that act under the testimony brought out on the stand; unless there has been some testimony as to damage, the damages could only be nominal; that is, if the defendant here is guilty of an unlawful act toward the plaintiff and inflicted an injury upon him—if you find that the defendant was guilty of an unlawful act towards the plaintiff, and that it has been done wantonly, wilfully and in a reckless manner, he would be entitled to punitive damages, to punish the defendant by way of compensation to him, the main object being to punish the defendant. If you find for the plaintiff, write your verdict in dollars and cents on the back of the complaint, and if you find for the defendant, say, We find for the defendant. As I said in the outset, there has been no actual damage proven here, and if you find that the act was committed, and that it was committed wilfully, wantonly and recklessly, and in utter disregard of the plaintiff's right, punitive damages may be added.

"By counsel for defense: Will your Honor explain to the jury the meaning of nominal damages? I don't know that the jury understands the meaning of the term 'nominal damages.'"

Counsel then read to the Court the following extract from 8 A. & E. Enc. L., 542, and requested that it be charged: "Damages may be further classed as either nominal or substantial; the former being a trifling sum, and awarded where

a breach of duty or an infraction of the plaintiff's right is shown, but no serious loss is proved to have been sustained," and added, "Under this law, nominal damages might be $5 or ten cents, or some such amount."

"By the Court: I could not explain nominal damages. The jury understands the meaning of nominal damages. If you come to the conclusion that the defendant is liable, you are not to consider any damages the plaintiff sustained by missing any engagement, because that was ruled out. If you come to the conclusion that the defendant is liable, you consider, first: what damages to give him, and then you say, Is there any proof of any substantial damages from the facts and circumstances in the case? If so, you can give that; but if there are no facts to show any actual damages suffered, then you can only give nominal damages; I can't tell you what that would be. If you come to the conclusion that the act was done wilfully, wantonly and recklessly, then you say how much damages you are to put on the defendant as punishment, I say; that is, if you come to the conclusion that the plaintiff is entitled to recover. Take the record, and if you find for the plaintiff, write your verdict out in dollars and cents; and if you find for the defendant, say, We find for the defendant, and sign your name as foreman."

The jury having returned a verdict of fifty dollars for the plaintiff, the defendant then moved for a new trial on the minutes of the Court. The Circuit Judge denied the motion. His order was:

"The trial in this case resulted in a verdict for the plaintiff for fifty dollars. I charged the jury that, in the absence of proof of substantial damages, the jury could only give nominal damages, having told the jury that they could not give any special damages, as there was no allegation or proof to warrant the same. But I also charged the jury that if they believed that the plaintiff had suffered loss or damage under such circumstances as would warrant punitive damages—having fully related such circumstances as would

warrant punitive damages—they might award such damages.

"The attorneys for the defendant move for a new trial on the minutes of the Court.    In their argument before me they contend that the jury did not give nominal damages, which might arise by implication, but had given punitive damages, as shown from the verdict, and that there is no proof in the record to sustain this verdict, and that the verdict is excessive.    I cannot agree with the counsel.

"It appears from the testimony that the plaintiff went to the depot at Spartanburg to take the train for Greenville, relying upon the advertisement that the train would leave at 12.20 at night, and before purchasing a ticket, was informed that the train would be twenty minutes late.    He purchased the ticket and boarded the train on its arrival, which was about twenty minutes after its schedule time, and the train pulled out and after going about one hundred yards, came to a stop and came back to the depot, where it remained until 10 o'clock the next morning, during which time the plaintiff stated that he received no satisfactory information from the defendant.    He states that after daylight he ascertained that there had been a wreck ahead, and he attributed the delay to this cause.    It was the duty of the defendant to safely transport the plaintiff to his destination, in accordance with his contract, within a reasonable time.    This it failed to do. The fact that there was a wreck does not, in itself, excuse the defendant, for it might have adopted some means to obviate the delay, even if there had been such wreck.    It appears that the plaintiff had to remain about the depot in great discomfort for ten or twelve hours, by reason of a state of facts wholly within the knowledge of the defendant, and which were not communicated to the plaintiff, and which if communicated might have permitted the defendant to have avoided much of the annoyance and inconvenience necessarily suffered by him under the circumstances.

"I think the jury were justified in saying that the defendant showed an inconsiderate and reckless disregard for the

9—69

rights of the plaintiff, and I cannot disturb the verdict, and, therefore, it is ordered, that the motion for a new trial be, and the same is hereby, refused."

Thereupon the defendant appealed to this Court on twenty-one exceptions, but as it abandoned in writing its 1, 2, 3, 4, 7, 8, 19 and 20, we will omit such abandoned exceptions and reproduce all the others.

*Motion for Nonsuit.*

"5. Error of the presiding Judge in refusing the defendant's motion for a nonsuit, upon the ground that the claim for punitive damages cannot be allowed in the absence of testimony tending to show any actual damage to plaintiff.

"6. Error of the presiding Judge in refusing the defendant's motion for a nonsuit upon the ground that there is no evidence tending to show such conduct on the defendant's part as will justify the allowance of punitive damages.

"9. Error of presiding Judge in refusing the defendant's motion for a nonsuit, upon the ground that the evidence fails to show that the delay was due to the negligence of defendant.

"10. Error of presiding Judge in refusing the defendant's motion for a nonsuit, upon the ground that the evidence does not show any actual pecuniary damages sustained by plaintiff.

*Judge's Charge.*

"11. Error of presiding Judge in charging the plaintiff's third request to charge, in that the charge allowed the recovery of punitive damages for gross negligence.

"12. Error of presiding Judge in charging the plaintiff's fifth request to charge, in that nominal damages only are presumed to follow the failure of a railway company to run its train according to schedule; actual damages, as well as special damages, must be alleged and proved; the charge permitted the jury to assess actual as well as special damages without any proof thereof.

"13. Error of presiding Judge in charging plaintiff's sixth request, in that (a) The action is based upon an

alleged failure of duty. The burden was upon the plaintiff to prove his allegations. (b) Even if negligent, the defendant would be liable, not for damages generally, but only for actual damages, or for nominal damages, if no actual damages were proved.

"14. Error of presiding Judge in charging plaintiff's seventh request, in that (a) Same as in preceding exception. (b) Same as in preceding exception.

"15. Error of presiding Judge in refusing defendant's second request to charge, in that the request contained a correct statement applicable to the case.

"16. Error of presiding Judge in refusing defendant's third request, in that the request contained a correct statement applicable to the case.

"17. Error of presiding Judge in charging the jury that if the defendant's conduct was wilful, wanton and reckless, the plaintiff was entitled to punitive damages. The plaintiff under no circumstances is entitled to punitive damages, but the imposition thereof should always be left to the exercise of the jury's discretion.

"18. Error of presiding Judge in refusing the request of defendant to explain to the jury the meaning of nominal damages; and in holding: 'I could not explain nominal damages. The jury understands the meaning of nominal damages.'

*Motion for New Trial.*

"21. Error of presiding Judge in overruling the defendant's motion for a new trial: (a) All actual damages were out of the case, as the Circuit Judge held. (b) The verdict was for punitive damages, and there was no evidence in the case of wilful tort or reckless conduct justifying punitive damages. (c) Nominal damages were not claimed in the complaint. (d) Error in holding that 'the jury were justified in saying that the defendant showed an inconsiderate and reckless disregard of the rights of the plaintiff,' there being no testimony to support this opinion."

We will now pass upon the grounds of exception. This

case fairly illustrates the wisdom of our State Constitution
in guaranteeing to every suitor a fair and speedy trial. There
has been no unnecessary delay, and one motive we had in
making a full showing of every step in the trial of the case
has been to show that the trial was full and fair. We have
been so much impressed with the evident desire of
the Circuit Judge to pass seriously upon every point
made, and with his success in such effort, that we
could well adopt his deliverances upon each as our own con-
clusions, but we will endeavor briefly to pass upon the ex-
ceptions ourselves. It will be proper to pass upon the ex-
ceptions relating to the alleged error of the Circuit Judge
in refusing to grant defendant's motion for a nonsuit. It
must be borne in mind that the Circuit Judge overruled the
demurrer to the complaint on the ground that the allegations
of fact in such instrument failed to state facts sufficient for
a cause of action. The appellant by abandoning his first,
second, third and fourth grounds of appeal, has left the
ruling of the Circuit Judge that the demurrer was untenable.
So that, to begin with, so far as this action is concerned, the
plaintiff is admitted to have a good cause of action. But
this leaves open the question, did the plaintiff by his testi-
mony establish the cause of action as set out in his com-
plaint? We agree with the Circuit Judge that the plaintiff
has produced some testimony on the material allegations of
his cause of action. As was very pertinently said by the
late Chief Justice McIver, in a matter of nonsuit in an action
against a railway company, to wit: in *Gillman* v. *Railway
Company,* 53 S. C., at page 213, 31 S. E., 224: "There can
be no doubt that when a railroad company receives a charter
from this State, or even when it has been chartered by an-
other State and allowed to exercise its corporate franchises
within the limits of this State, it assumes certain duties to
the public, accompanied with corellative rights of the public,
which duties it is legally bound to perform on the one hand,
and to recognize those rights on the other. When such a
corporation assumes the position of a carrier of passengers

within this State, as the defendant corporation is conceded
to have done, it assumed, amongst other duties, the obliga-
tion to receive and carry safely and *promptly* (italics ours)
all persons offering themselves for transportation to and
from the various stations along the line of its road; and when
the plaintiff offered himself as a passenger at Denmark, one
of the defendant's stations, to be carried to Columbia, the
termination of defendant's road, and thence to Richmond,
Va., by connecting lines, he had a right to be received as a
passenger and afforded every proper and necessary facility
for reaching his destination comfortably, safely and
promptly, provided he complied with the reasonable regula-
tions of the company for that purpose; and he also had a
right to ask for and obtain from the officers and agents of the
defendant company all necessary information to enable him
to accomplish his purpose. If, therefore, the plaintiff was
deprived of or hindered in obtaining the enjoyment of his
legal right by the wilful default of the agents or officers of
the company intrusted with the performance of the duties
resting upon the company, or by the wanton or reckless
disregard of the rights of the plaintiff, he certainly would
have a cause of action against the company, not only to
recover damages for any pecuniary loss he might thereby
sustain, but also for exemplary damages, as a punishment
for such wilful and wanton disregard of the plaintiff's legal
rights. Inasmuch as plaintiff is not sueing for any conse-
quential or special damages, the absence in the complaint of
any such damages, cannot affect the question, the claim being
for exemplary damages, which arose immediately out of the
alleged misconduct of defendant's officers and agents."
Again, in the case of *Young* v. *Telegraph Co.,* 65 S. C., at
page 99, Mr. Justice Gary, as the organ of this Court, points
out very significantly the impropriety of granting a nonsuit
in cases analogous to this. The ticket agent at Spartanburg,
with commendable politeness, informed the plaintiff that
train No. 35 was twenty minutes late of the schedule time.
And so it was. But when that train reached Spartanburg,

at about 12.40, and the plaintiff got on board, along with a number of passengers, such train after moving down the track towards Greenville, was stopped and stayed there until after 10 o'clock the next morning, a stop of nearly ten hours. When the plaintiff applied to the conductor as to when the train would move on, no information of any worth was vouchsafed, so far as any information as to the cause of the delay or its duration was ever given to the passengers and certainly to the plaintiff. What attention was paid to the duty of promptly delivering the passengers at their respective stopping points? None whatever. Great stress is attempted to be laid on the fact that next morning, after daylight, the plaintiff of his own motion walked down the track and found that another engine and one car was off the track. Now, in candor, what showing was thereby made to relieve the railroad company of its duty in the premises? It was not shown when this accident occurred or that the railway company was not flagrantly remiss in ridding its track of these impediments to travel. It was the railway's duty to have promptly removed these obstacles. It was done after 10 o'clock that morning. Are the traveling public to be treated in this way by a common carrier? From these considerations, together with the views expressed by the Circuit Judge on this point, we overrule these exceptions relating to the nonsuit.

We will next consider the exceptions relating to the alleged errors in the charge to the jury by the Circuit Judge, as set out in exceptions 11, 12, 13, 14, 15, 16, 17, 18.

(15) The Circuit Judge could not charge the second request of defendant, for, if he had done so, he would have charged upon the force of the testimony, which is forbidden by the Constitution of this State.

(16) The same objection exists as to this request to charge as pointed out in the expression of our views on the 15th exception.

(14) The fourteenth exception is overruled, re-

ferring as it does to another exception for its objection. We cannot uphold this practice.

(11) The charge as presented by the Judge shows that he did not direct the jury to find damages for wilful acts *per se,* but only when coupled with other matters. This exception is overruled.

(12) The Judge does not decide that the failure of a railway company to run on its schedule time is an unlawful act, but only that it *may be* such. This exception is overruled.

(13) We think the Judge properly charged as here pointed out, for it is the duty of the railway company to run its trains on schedule time. It is a part of its contract with the public; and the *onus* is upon it to show why the dereliction of its duty occurred. This exception is overruled.

(17) We see no error here. It is the duty, under our Constitution, for Circuit Judges to declare the law to the jury in their charges. This is all that the Circuit Judge attempted to do. This exception is overruled.

(18) We see no error here. "Nominal damages" are what the words import. Like the expression, *"Beyond a reasonable doubt."* The defendant's attorney read from a highly respectable authority, but the Circuit Judge feared if he adopted the language there cited, he might mislead the jury. Besides, he had already virtually in his own language charged the jury sufficiently on this point. This exception is overruled.

We will lastly examine the 21st exception. It needs few words from us to declare our inability to interfere here. The Circuit Judge was called on to grant a new trial on the minutes of the Court. He would not do so because he was satisfied the jury had followed the testimony in making up their verdict. We would agree with him in that conclusion if it were our duty to do so, but under the law, so far as sufficiency of the testimony is concerned, the discretion is wisely vested in the Circuit Judge. This exception is overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be and it is hereby affirmed.

MESSRS. JUSTICES JONES AND WOODS *concur in the result.*