7016

## TABER v. SEABOARD AIR LINE RY.

1. CARRIER—PASSENGER—PLEADINGS—NEGLIGENCE.—In an action *ex delicto* by passenger against carrier, allegation of contract of transportation is merely to show existence of relation, and under section 186a of Code of Procedure, the pleader may jumble together in one cause of action as many acts of negligence as he deems contributed to the alleged injury, whether they all occurred in this State or not.

2. IBID.—IBID.—NEGLIGENCE—WILFULNESS.—There being no evidence as to the law of North Carolina in this case, the action is maintainable under the common law of the forum, and under that carrier is liable for punitive damages for wilful acts of its servants, whether it directed or ratified them or not.

3. IBID.—IBID.—Carrier is liable for nervous breakdown caused by its negligence in not making scheduled connection. Here there was also evidence tending to show the passenger was put to extra expense, delay and worry because of negligence in conductor in not informing her of an earlier train to her destination than the one he directed her to take.

4. IBID.—IBID.—WILFULNESS cannot be inferred from the fact that the porter of a Pullman car asked a passenger, who had only purchased a seat in the car, to change her seat several times, nor from the fact that he took out her luggage at the point at which she was to change cars according to her ticket.

5. IBID.—IBID.—The carrier is not liable for wilfulness in porter of Pullman car in not making up berth.

Before KLUGH, J., Richland, December, 1907. Reversed.

Action by Louisa B. Taber against Seaboard Air Line Railway. From judgment for plaintiff, defendant appeals.

*Messrs. Lyles & McMahan,* for appellant, cite: *Plaintiff should have been required to elect upon which cause of action he would go to trial:* 37 S. C., 55; 38 S. C., 487; 42 S. C., 114. *New trial should have been granted because action was tried on several causes of action and there was no evidence in support of one:* 5 Ency. P. & P., 338; 73 S. C., 192; 63 S. C., 467.

*Messrs. F. G. Tompkins* and *E. M. Thomson,* contra, cite: *The complaint states a cause of action for tort and not on contract:* 70 S. C., 87; 79 S. C., 162; 71 S. C., 386; 62 S. C., 222; 35 L. R. A., 252; 54 Wis., 342; 54 S. C., 498; 71 S. C., 448, 533; 78 S. C., 552; 73 S. C., 143; 69 S. C., 121; 6 S. C., 130; 73 S. C., 189. *Remedy for misjoinder of causes of action is demurrer:* 9 S. C., 277; 47 S. C., 211. *Misjoinder and election are determined by the law of the forum:* Hutch. on Car., sec. 208; 2 Bail., 219; 2 Hill, 604; 73 S. C., 140; 68 Ga., 572. *In absence of allegation and proof, common law of forum is presumed to be of force in a sister State:* 6 Ency., 284; 39 L. R. A., 835; 26 S. C., 415; 66 S. C., 98; 59 Am. Dec., 333; 57 Am. R., 177; 94 Ill. App., 443; 83 Minn., 190; 42 Am. St. R., 389; 72 N. E., 345; 113 Am. St. R., 880; 48 L. R. A., 228; 6 Am. R., 43; 57 N. Y., 489; 75 S. C., 526; 73 S. C., 140. *Punitive damages may be awarded for wilful acts of servant without ratification by master, and this is no addition to common law:* 28 S. C., 381; 35 S. C., 475, 493. *There was evidence on which punitive damages could be based:* 79 S. C., 164; 78 S. C., 508; 79 S. C., 154; 35 S. C., 504, 489; 54 S. C., 511; 69 S. C., 116; 71 S. C., 448. *Whether servants seen by plaintiff were employees of carrier or of Pullman Company was for jury:* 8 L. R. A., 226. *Carrier undertakes to protect passenger against personal rudeness:* 28 S. C., 381; 121

U. S., 637; 87 Mo., 74; 102 U. S., 451. *Onus is on carrier to show why train was not run on time:* 69 S. C., 135; 65 S. C., 99; 71 S. C., 532; 13 Am. R., 108; 76 S. C., 237.

September 11, 1908. The opinion of the Court was delivered by

MR. JUSTICE JONES. The plaintiff, as passenger, recovered judgment against defendant, as carrier, for $2,791.75, as damages for personal injuries alleged to have resulted from defendant's negligent and wilful misconduct, in particulars which will hereafter more fully appear.

The defendant's exceptions to this judgment raise questions which will now be considered in connection with the relevant facts.

1. The Circuit Court did not err in refusing to require plaintiff to elect on which cause of action she would proceed. The contention is that the complaint stated several distinct causes of action jumbled together, viz.: (1) A breach of contract in failing to carry plaintiff comfortably and promptly from Columbia, S. C., to her destination, Portsmouth, Va.; (2) a wilful tort, by mistreatment and humiliation after the car left Columbia, S. C., and other times on said trip; (3) a wilful tort in ejecting plaintiff from the train at Hamlet, N. C.; (4) a wilful breach of contract in failing to prepare a berth in the Pullman car; and (5) in wilfully failing to give plaintiff information as to connections, and compelling her to leave the train at Norlina, N. C., upon false information as to connections. Some of these grounds or causes of action originated in South Carolina and some in North Carolinia; and it is argued that section 186a does not apply to a case like this. We think the action is *ex delicto,* and, so far as reference is made to the contract, it is merely for the purpose of showing the existence of the relation of carrier and passenger, from which flow certain

duties imposed by law. *Hellams* v. *Tel. Co.*, 70 S. C., 87, 49 S. E., 12.

In an action *ex delicto*, section 186a allows the pleader to set forth all the acts of negligence or other wrongs causing or contributing to the injury for which suit is brought, and denies the right of defendant to require an election. *Roundtree* v. *Railroad*, 73 S. C., 271, 53 S. E., 424. The link which prevents severance under the statute as a matter of pleading is the fact that the various acts are set forth as causing the injury sought to be remedied. Nor does the fact that some of the acts alleged occurred in North Carolina affect the question. An action may be maintained in this State for an injury occurring in another State. *Crosby* v. *Seaboard Air Line Railway*, *ante* 24.

2. We cannot sustain defendant's contention, made in motion for nonsuit and in request to charge, that this action is to be governed by the law of North Carolina as to occurrences in North Carolina, and that, under the law of North Carolina, punitive damages cannot be recovered against a corporation unless it is shown that the corporation has authorized or ratified the acts of its servants, or been negligent in their employment.

There was no evidence before the Court as to the law of North Carolina. The rule of law in this State is that, in the absence of evidence as to the law of a sister State, where the injury occurred, the action is governed by the common law of the forum. *Crosby* v. *Seaboard, etc., Ry., supra*. The law in this State warrants the finding of punitive damages against a master for the wilful act of his servants, done within the apparent scope of their agency, without proof that the master directed or ratified such conduct. *Quinn* v. *Ry.*, 29 S. C., 386, 7 S. E., 614; *Rucker* v. *Smoke*, 37 S. C., 380, 16 S. E., 40; *Schumpert* v. *Ry.*, 65 S. C., 338, 43 S. E., 813.

3. There was no error in refusing to grant a nonsuit as to the cause of action based upon negligence, nor in refusing

to direct a verdict for defendant, because it cannot be said that there was no evidence whatever of negligence resulting in some actual damages to plaintiff. There was testimony that when, on April 17, 1906, plaintiff's agent bought her ticket from Columbia to Portsmouth, the defendant's agent at Columbia represented that the train would arrive at Portsmouth at 8 o'clock next morning, and that at Hamlet, N. C., the Portsmouth pullman would be attached and that she would not have to change trains, but would simply have to pass from one car to the next without getting off the train. Plaintiff was anxious to make prompt connections, as she was on her way to the bedside of her daughter, who was critically ill at Norfolk, Va. The train left Columbia about 7 o'clock p. m., April 17, some minutes late, and arrived at Hamlet about 11 o'clock, too late to make connection there for Portsmouth. After leaving the train at Hamlet, and discovering the failure to make connection, she, with the knowledge of the conductor, returned to the car she had left with the view to go on to Norlina and there connect with the train for Portsmouth. On this train, after leaving Hamlet, she contracted for a berth on the pullman car, with a right of transfer to Portsmouth train at Norlina, paying therefor $2.50 to the pullman conductor. About 1 o'clock, as she supposed, she requested that her berth be made up, and was told by the porter that she might have it made up for two hours, and she thereupon declined to have it made up, sitting up all night. The belated train reached Norlina about 6 o'clock on morning 18th, where she disembarked. Not wishing to stay in the waiting room in the depot, where there was a number of men, on her application to the depot agent an escort was provided for her to the hotel nearby, where she remained until 2 o'clock p. m., when she took train for Portsmouth, reaching that place about 8 o'clock p. m. There was testimony that, if the conductor had given her the infor-

21—81

mation, she could have made immediate connection at Norlina with a train to Portsmouth, as such a train left shortly after the arrival of her train at Norlina. The delay resulted in some loss of time, some bodily fatigue, some extra expense, for which plaintiff should receive compensation, if the delay was the result of defendant's negligence. Assuming that mere representations as to schedules and connections are not to be considered as guarantees, still it is ordinarily the duty of the carrier to run its trains on schedule time and make the usual and advertised connections, and it is liable for any injury directly resulting from any negligent failure to make such schedule and connections.

The plaintiff also testified as follows: "Q. Did you get any sleep to speak of that night at all? A. No, sir. Q. The night you traveled? A. No; I could not sleep. Q. How did it affect you; were you very nervous? A. Yes, and travelling alone. I am rather of a nervous temperament, and it worried me a great deal. Q. Were you worrying about your daughter during this time? A. I certainly was. Q. Did you hear anything from her during your trip? A. No, sir; I could not hear a word. Q. What effect did it have on you, after you had finally arrived at your destination? A. I was broken down, and I had to go right in to nursing my daughter. Q. What was your nervous condition? A. Broken down and broken up about it."

There can be no recovery in this action for mere mental suffering, disconnected from bodily injury, resulting from defendant's negligence. *Taylor* v. *Atlantic Coast Line,* 78 S. C., 559. But if there was a nervous breakdown, as a direct result of defendant's negligence, for such bodily suffering there should be compensation.

On reaching a just conclusion on this line a jury should be very cautious not to hold defendant liable for any bodily suffering or nervous breakdown not directly due to its negligence. The plaintiff was an elderly lady, about sixty-three

years old, of a nervous temperament, unaccustomed to travel, was alone, and was naturally very anxious about her ill daughter, and possibly would have spent a sleepless night and have been greatly fatigued and wornout on reaching her destination, even had she made the connection at Hamlet precisely as she supposed she would do. The defendant, of course, would not be liable for any nervous breakdown, involving bodily suffering or injury due to these causes, but would be liable only for what could be fairly attributed to its negligence. When it is shown that the carrier has failed to make its schedule and connections, and this results in an injury to the passenger, a presumption of negligence arises and the burden is cast upon the carrier to show that such failure was not due to its negligence. *Miller* v. *Southern Ry.*, 69 S. C., 135, 48 S. E., 99. The defendant did offer explanation by testimony to the effect that the delay was due to being twenty-eight minutes late from Columbia; to loss of twenty minutes on account of jumping gully, trestle being on fire; to delay nine minutes at Camden, loading baggage; to twenty-one minutes lost between Columbia and Hamlet, due to bad coal, and to other causes of delay beyond Hamlet; but, as it cannot be said that such explanation conclusively negatived negligence, affecting the schedule and connections, it was properly submitted to the jury for determination. Moreover, there was testimony from which it might be inferred that defendant's conductor was negligent in not informing plaintiff of the chance of connecting at Norlina with an earlier train, which the agent at Norlina informed her she might have taken.

4. We are of the opinion, however, that there was no evidence whatever tending to show any wilful or wanton breach of duty by defendant, and that it was reversible error not to grant defendant's motion for nonsuit, as to the cause of action based on wilfulness, and in refusing to instruct the jury not to award punitive damages, as requested.

324 TABER v. RAILWAY.

Opinion of the Court. [81 S. C.

We deem it necessary to notice only the two main circumstances relied on to show a wilful breach of duty.

The first appears in the following testimony by plaintiff: "Q. On the way from Columbia to Hamlet, state whether you were annoyed by the officials of that car? A. Yes, sir; I changed my seat two or three different times. The porter would come and tell me—would take up my satchel and would say I must get up. I said, why? I said, I have changed my seat. He said it was the conductor's orders. I got up and changed, and that same thing was done again. I had three different seats after I got on the pullman. Q. Did you protest against being moved? A. Yes, sir. He said it was the conductor's orders. Q. Did he allow you any option? A. No, sir. Q. How was his manner in speaking to you? A. I would not say he was very polite. He said in a rough sort of way it was the conductor's orders."

It is not disputed that the porter, during her journey from Columbia to Hamlet, had furnished her with pillows and pulled out her seat to make her comfortable, as she did not wish, and had not procured, a berth. She, however, only had the right to occupy a seat, and whenever it was necessary to make up berth for some other occupant of the section there was nothing in reason to do but to request her to move to another seat, and she was in each instance given a comfortable seat. The only other alternatives left to the porter was either to deny the right of the occupant to his berth or pull down the berth over the plaintiff. In her inexperience as a traveller, and in her distressed condition of mind, plaintiff may have supposed that she had been unnecessarily and impolitely moved; but to impose punitive damages upon defendant upon the undisputed facts would be a travesty of justice.

The other circumstance is found in the testimony of plaintiff, that on arrival of the train at Hamlet the porter picked up her satchel and umbrella and said to plaintiff that she

had to get off there; that she protested, declaring that there was a mistake; that she had been told that she would not have to leave the coach, except to step into another coach; that the porter said it was the conductor's orders, and carried her things off in spite of her protest. A stranger, seeing her distress, offered assistance, and they found the conductor and explained that she wanted to get on to Norfolk as quick as she could, and the conductor was asked what the lady should do. Plaintiff testified that the conductor, "in a rather gruff kind of way," said: "I suppose she can get back on this train," and she thereupon got back on the car she had left.

This is the foundation for the claim that plaintiff was unlawfully ejected from the train. By the plaintiff's own testimony she had paid for a seat in that coach to Hamlet only, and she knew she was to leave that coach at Hamlet for the Portsmouth coach. Her protest against leaving the coach grew out of her belief that she would only have to step from that coach to the Portsmouth coach. But the Portsmouth coach was gone, because her train was belated beyond the ordinary waiting time. Hamlet was her natural and contemplated changing place, hence there was no alternative but to give her information that she was to get off there and to assist her by carrying out her baggage. As the coach she had been riding in was to go on North, by way of Norlina, her return to it, after conference with the conductor, was merely an alternative between staying over at Hamlet until the next Portsmouth train and going on with a view to connect with Portsmouth train at Norlina.

We are unable to discover in this matter a scintilla of evidence suggesting an unlawful ejection from the train or any wilful disregard of plaintiff's rights as a passenger.

5. The appeal requires reference to one other matter. The plaintiff testified that between Hamlet and Norlina, late at night, she supposed about 1 o'clock, she asked the porter to

make up her berth; that the porter told her she might have it made up for two hours, and that she declined to have it made up for so short a time. The train actually reached Norlina about 6 o'clock, and plaintiff would necessarily have been aroused from the berth some time before arrival at Norlina, so she could disembark there. Whether the porter knew when the belated train would reach Norlina, and whether either the porter or the plaintiff was mistaken as to the lateness of the hour, when the making up of the berth was requested, need not be considered. Conceding that the porter was negligent, or even wilfully disregardful of plaintiff's request in this matter, the defendant company is not liable in the absence of evidence connecting it with the special contract of the pullman company. The delict, if any, was a breach of duty by the pullman company, since it appertained peculiarly to the contract of that company to furnish berth accommodations as distinguished from the defendant's contract of safe and comfortable transportation.

The jury were, however, correctly instructed as to the law governing in such case, and it may be that the jury disregarded this matter in estimating the liability of the defendant. At any rate, the circumstance affords no basis for punitive damages against defendant.

As the question of punitive damages was improperly submitted to the jury, and as we have no means of accurately determining that the verdict excluded such damages, there must be a new trial.

The judgment of the Circuit Court is reversed.

MR. JUSTICE GARY *concurs in the result.*