### 7361

### MULLIGAN v. SOUTHERN RY.

1. EVIDENCE—CARRIER.—DECLARATIONS of station agent of a carrier of
   passengers as to the time of the arrival of a train and his posting
   bulletins to that effect is admissible on the issue whether the carrier
   had breached its duty to exercise proper care in carrying a pas-
   senger to his destination with promptness.

2. CARRIERS—PASSENGERS.—An instruction to the effect that the agent of
   the carrier may guarantee a schedule notwithstanding the passenger
   had notice the agent had no authority to do so is misleading, as a
   passenger takes passage subject to such delays as are not caused by
   the negligence or wilfulness of the carrier.

3. IBID.—IBID.—NEGLIGENCE—WILFULNESS.—Evidence of long delay in
   making schedule connections resulting in expense and loss of time
   to a passenger raises a presumption of negligence, but in this case
   the carrier has explained the delay in such way as to show there
   was no wilfulness in it.

   *Miller* v. *Ry.,* 69 S. C., 125, *distinguished from this case.*

Before WILSON, J., Aiken, Fall term, 1908.   Reversed.

Action by B. F. and Ella Mulligan against Southern
Railway.   From judgment for plaintiffs, defendant appeals.

*Messrs. Hendersons,* for appellant, cite: *No evidence of
wilfulness:* 77 S. C., 527; 78 S. C., 109; 77 S. C., 154; 76
S. C., 307; 73 S. C., 523; 68 S. C., 98; 64 S. C., 423.   *Effect
of non-guarantee notice:* 5 Ency., 586; 32 L. R. A., 544.
*Posting bulletin statute provides its own remedy:* Endlich
on Int. Stat., secs. 470, 472.

*Messrs. Davis, Gunter & Gyles,* contra, cite: *Carrier presumed liable:* 69 S. C., 121; 53 S. C., 213; 60 S. C., 74. *Issue of wilfulness properly sent to the jury:* 69 S. C., 135; 65 S. C., 99; 53 S. C., 224; Moore on Carriers, 606; 81 .S. C., 317; 2 Ency., 585, 586; 54 S. C., 504; 76 S. C., 378, 204; 52 S. C., 336; 62 S. C., 138; 38 S. E., 328; 52 S. C., 329; 76 S. C., 194; 61 S. C., 189; 77 S. C., 61; 69 S. C., 165. *Carrier is liable for failure of agent to furnish information:* Code 1902, 2170; 69 S. C., 457; 81 S. C., 457. *Conversation between passenger and agent admissible:* 143 U. S., 60; 66 Fed., 711; 75 S. C., 356; 69 S. C., 133; 81 S. C., 317; 4 Ell. on R. R., 416-7; 71 S. C., 447; 5 Ency., 639; 19 S. C., 373; 27 S. C., 67; 56 S. C., 145; 1 Green. Ev., secs. 184c, 184d; 72 S. C., 258; 1 Ell. Ev., 326, 378; 5 Ency., 582, 641, 642, 643, 502; 12 Ency., 502; 12 A. & E. R. C., 149; 35 S. W., 741; 56 Me., 234; 60 Md., 449; 52 A. & E. R. R. C., 205.

November 4, 1909. The opinion of the Court was delivered by

MR. CHIEF JUSTICE JONES. The plaintiffs, husband and wife, having purchased tickets from Langley, S. C., to Pineland, S. C., and return, became passengers on defendant's train at Langley at about 6:30 p. m. December 24, 1906, and about 8 o'clock p. m. reached Blackville, S. C., a junctional point, where they expected to take train No. 29, running from Washington to Florida, scheduled to reach Blackville at 2 a. m. and to arrive at Pineland at 4:31 a. m. Christmas morning. Mr. Mulligan's intention was to spend Christmas holiday in the home of his parents, living at Pineland, and returning leave Pineland at about 2 a. m., December 26, and reach Langley at 6:22 a. m., to resume his business that morning. Mrs. Mulligan, with the two small children accompanying, expected to remain at Pineland for several days before returning. Train 29 was about thirteen hours late, and after twelve hours late was annulled as such,

and ran as first section of No. 33, due to arrive at Blackville
at 1:45 p. m.   The Blackville agent notified Mr. Mulligan of
the annulment of 29 some minutes after 10 a. m.    Finding
that he could not go to Pineland and return, as contemplated,
Mr. Mulligan returned to Langley that afternoon, while
Mrs. Mulligan and children awaited 29, then running as 33,
which arrived at Blackville 3:59 p. m., and carried her to
Pineland, arriving about 7:00 p. m., thirteen hours later
than contemplated.   This delay deprived plaintiffs of the
pleasure of spending Christmas holiday and attending a
family reunion at the home of their parents, and entailed
some actual expense, which plaintiff estimated at $9.25,
including his return ticket, $3.83, and return fare to
Langley, $1.15, and hotel expenses for self and family at
Blackville, $4.25.

The complaint charged that this delay, disappointment,
worry and expense were the result of the negligent and
wilful disregard of plaintiffs' rights by defendant, to plain-
tiffs' damage $1,900   Judgment for $500 was recovered,
and the defendant appeals.

We first notice the exceptions to the rulings as to admis-
sibility of testimony.

Plaintiff was allowed to testify as to the posting of bulle-
tins by the Blackville agent as to the time when train 29 was
expected to arrive, and as to the conversation with the agent
touching the same.   Objection is made that since
section 2170, as amended February 20, 1903, gave a
remedy in the event of any grievance from non-com-
pliance with its terms, such remedy was exclusive, and the
matter could not be brought into this action, and that the
Blackville agent had no duty to perform in respect to plain-
tiffs' transportation, except to post such notices.   Some time
after arrival in Blackville plaintiffs were informed by the
agent that 29 would arrive before 6:00 a. m.   They went to
the hotel and retired, returning to the station by 6:00 a. m.

Successive bulletins every half hour were posted showing expected arrival of 29 until 10 a. m.

Plaintiff testified that a few moments after this time the Blackville agent informed him that he had just received a telegram announcing that 29 had been annulled, and would not come. The agent further told plaintiff that he did not know what was the trouble with 29.

There was no error in admitting the testimony, because it was responsive to the allegations of the complaint, and because it was within the scope of the duty of an agent at a junctional station to give the passenger, when requested, all reasonable information within the agent's knowledge, and not within the passenger's knowledge, as to the arrival of the connecting train, which the passenger is to take.

The testimony was relevant, for what it was worth, with a view to show whether defendant had breached its duty to exercise proper care to carry plaintiffs to their destination with promptness, as alleged.

In this connection we notice appellant's exception to the charge, "that notwithstanding the time table, or schedule, if an agent of the company makes a positive statement to a passenger who buys a ticket, and informs him that the train is coming, how long delayed, why it cannot be there, then that comes in and governs the contract as to the conditions mentioned in the time table, and where a case of that kind occurs you have a right to consider both in getting at the contract between the passenger and the railroad company. In other words, this time table does not keep a passenger from getting verbal agreements in addition to what is embodied in that time table."

The time table, which was delivered to plaintiff at the time of the contract of transportation at Langley, contained this notice:

"Southern Railway, General Offices, Washington, D. C.

"Notice. These time tables show the time at which trains may be expected to arrive and depart from the several

stations, and to connect with other trains, but their departure or arrival or connection at the time stated is not guaranteed. The time of connecting transportation companies is published for the information of passengers, and every care is taken to keep it correct, but this company does not hold itself responsible for any errors or omissions therein.

"W. H. TAYLOE,

"General Passenger Agent, Washington, D. C."

At the bottom of said page the following notice is printed:

"For exact rates, dates of sale and other detailed information, apply to nearest Southern Railway agent or agents of connecting line."

Plaintiff testified that he informed the agent at Langley of his purpose to attend the Christmas dinner and family reunion at the home of his parents, and his purpose to return on the morning of December 26th; that they went over the time table together; that the agent ascertained by wire that 29 was still on the schedule, and that the agent represented that he would certainly connect at Blackville with 29 at 2:52 a. m., and advised him to take the 6:30 train leaving Langley. Defendant's agent testified that he made no guarantee as to schedules.

Appellant contends that the charge was erroneous because any representation made by defendant's agent, in a nature of a guarantee of the schedule, was beyond the authority of the agent, in view of the notice in the time table.

We think the charge was misleading, because it bound the defendant to a guarantee of the schedule by an agent, even though the passenger had notice that the agent had no authority to do so.

The carrier cannot by contract limit its common law liability for injury resulting from its negligence, but if the passenger has, or should have, knowledge that the schedules as published are not guaranteed by the carrier, he takes passage subject to such delays in making advertised schedules and connections as are not due to the negligence or

wilful act of the carrier; but if the carrier negligently or wilfully fails to make the published schedules, the passenger injured thereby may recover damages. *Miller* v. *Railway Co.*, 69 S. C., 133, 48 S. E., 99; Note to 32 L. R. A., 543-4.

At the close of plaintiffs' testimony defendant moved for a nonsuit as to the action based upon negligence, and also separately as to the action based upon wilfulness, on the ground that there was no evidence to sustain either cause of action.

At the close of all the testimony, which included defendant's explanations as to the cause of the delay, motion for nonsuit as to the cause of action based on wilfulness was made.

This same question was renewed by request to instruct the jury.

As to the negligence, we think there was no error in refusing the nonsuit.

When there is evidence of a long delay in making schedule connections, resulting in some expense and loss of time to a passenger, as in this case, a presumption of negligence arises, and it is incumbent on the carrier to show that such failure was not the result of negligence. This is fair and just, as the carrier is the only one that can make such explanation. *Miller* v. *Ry.*, 69 S. C., 125, 48 S. E., 99; *Taber* v. *Ry.*, 81 S. C., 317, 62 S. E., 311.

While the evidence showing explanation in this case is minute and strong, covering many delays, some brief and some long, owing to the numerous causes, the delay in starting at Washington, waiting on Northern connections, the extremely cold weather, the pressure of the Christmas traffic and travel, the failure of the engine to steam well on account of weather conditions, the blocking of the track by the breaking down of an engine, shortage of water and the necessity to put out the fire in engine, the bursting of water tank, and freezing of switches, all tending to show an unprecedented series of obstructions to prompt passage, but

we are nevertheless unwilling to declare that the presumption of negligence has been so conclusivly overthrown as that it was not proper to leave to the jury to pass upon completeness of the explanation.

But we are clearly of the opinion that there was no evidence of any wilful breach of duty to plaintiffs. The very fact that long delay in making schedule warrants the presumption of inadvertent negligence excludes the presumption of wilfulness, for two contrary presumptions will not arise from the same fact. If the explanation fails to overthrow the presumption of negligence it certainly rebuts any imputation of wanton or intentional disregard of duty warranting punitive damages. Even if the rule applied to the transportation and delivery of telegraphic messages should apply, and the law should authorize a presumption of wilfulness from long unexplained delay in making schedules; the uncontradicted evidence in this case repels the idea of any wilful breach of duty. *Roberts* v. *Tel. Co.,* 73 S. C., 529, 53 S. E., 985; *Butler* v. *Tel. Co.,* 77 S. C., 154, 57 S. E., 757.

The cases of *Fort* v. *Southern Ry.,* 64 S. C., 423, 42 S. E., 496, and *Aaron* v. *Southern Ry.,* 68 S. C., 98, 46 S. E., 556, support appellant's view that nonsuit should have been granted as to the action based upon wilfulness. The case of *Miller* v. *Southern Ry.,* 69 S. C., 117, 48 S. E., 99, is not to the contrary. In that case the motion for nonsuit was upon the whole case, alleging both a negligent and wilful tort; and, further, there was in that case no attempt on the part of the conductor to give information to passengers on board as to the wreck ahead which he possessed, and which, if given, would have avoided much of the inconvenience suffered by the passenger. In this case it does not appear that the agents of defendants withheld from plaintiffs any information they had, which, if communicated, would have avoided the causes of injury alleged. There was no other way that plaintiffs could have pursued

their journey or avoided the expense and delay than in the way they did, even if they had been informed of the delay of 29 immediately on reaching Blackville.    The agents, both of Langley and Blackville, appear to have been solicitous to inform plaintiffs.

The Blackville agent notified them that 29 would not arrive before 6 :00 a. m., and thus they were enabled to take rest at the hotel, and the successive bulletins, so far as appears, conveyed all the information the agent possessed, and plaintiff testified that as soon as the agent got the news, at 10 a. m., that 29 had been annulled, plaintiff was informed of it.    The explanation that a train is "annulled" when twelve hours late, and thereafter run as an extra, or as a section of another train, was ample to show that agent was giving correct information.

We do not deem it necessary to further consider the exceptions, as the foregoing is sufficient to warrant a new trial.

The judgment of the Circuit Court is reversed, and the case remanded for a new trial.