6719

TAYLOR v. ATLANTIC COAST LINE RAILROAD CO.

1. CARRIERS—PASSENGERS.—When a passenger has reached his destination and alighted from the train he is still entitled to protection as a passenger until he has had a reasonable time to leave the station premises. But when the injury results from the conduct of third persons on the station premises, knowledge of the existence of the danger or of circumstances from which the danger may have been anticipated is necessary to fix liability upon the carrier.

2. NEW TRIAL.—This Court has no jurisdiction to reverse a judgment because the verdict is excessive.

3. CONTINUANCE.—Motions for continuance are within discretion of the Court.

4. CARRIERS—PASSENGERS—DAMAGES.—A SCINTILLA OF EVIDENCE is any material evidence which, if true, would tend to establish the issue in the mind of a reasonable juror. In this action for punitive damages, verdict set aside; the evidence showing no physical injury to plaintiff, but that she was carried past her station, it not having been called, the injury not resulting from failure to put her off at her station; that she was returned on the next train, which caused a delay of more than an hour, and caused her to miss a relative who was to meet her at the station; when put off at her destination in care of an agent of the carrier, she was left by him in a crowd of drunken, boisterous persons, using obscene language and was jostled by some of them as she made her way in the crowd.

MR. JUSTICE GARY *dissents.*

Before DANTZLER, J., Colleton, April, 1906.   Reversed.

Action by Emily Taylor against Atlantic Coast Line R. R. Co.   From judgment for plaintiff, defendant appeals.

*Messrs. W. Huger FitzSimons* and *P. H. Gadsden* for appellant.   *Mr. FitzSimons* cites : *A carrier is not liable for indignities to a passenger by third persons execpt where there is reasonable anticipation of such indignities:* 17 A. N. R., 320; 53 Pa., 512; 8 Neg. C., 602; 91 A. D., 224; 34 Conn., 554; 8 Neg. C., 103, 553, 602; 55 N. Y., 108; 15 N. R., 302; 1 Fet. on Car., sec. 96; 18 A. N. R., 112; 37 At. R., 328; 59 At. R., 285; 74 S. C., 332; 68 S. C., 153; 57 S. C., 332; ·Hutch. on Car., sec. 521a; 112 N. Y., 443; 111

N. Y., 488; 141 Mass., 31; 6 Cyc., 608, 541, 542. *Action is solely for vindictive damages and there is no evidence to support the verdict:* 71 S. C., 153; 57 S. C., 289; 52 S. C., 371; 66 S. C., 76; 64 S. C., 423, 569; 49 S. C., 460; 57 S. C., 259; 58 S. C., 215; 23 S. C., 231; 68 S. C., 98, 623; 60 S. C., 74. *No damages for mental suffering:* 68 S. C., 98. *New trial should be granted for absence of material witness:* Grah. & Wat. New Trials, 209; 1 Bail., 624; 14 Ency. P. & P., 740, 751; 8 Tex., 382; 1 N. & McC., 33.

*Messrs. Griffin & Padgett,* contra. *Mr. Padgett* cites: *Carrier owes highest degree of care to passenger while leaving the train:* 71 S. C., 532; 39 S. C., 162; 66 S. C., 6; 2 Ency., 744; 19 Am. Neg. R., 7. *There was evidence here from which wilfulness may be inferred:* 69 S. C., 132; 65 S. C., 437, 128, 444; 71 S. C., 104.

December 4, 1907. The opinion of the Court was delivered by

MR. JUSTICE JONES. The complaint alleges that the plaintiff, at Charleston, S. C., on the night of June 13, 1904, boarded defendant's train from Charleston to Savannah as a passenger for Green Pond, S. C., to visit a sister who was ill and lived a few miles from said station; that the conductor was informed of her anxiety to reach her sister and was requested to notify her of the arrival of the train at Green Pond; that no notice was given her that her station was reached, and that no call of the station was made; that in consequence she was carried by her station to Yemassee, but was there transferred to defendant's return train and carried back to Green Pond; that her brother-in-law was at the station to meet her when she was carried by, but upon learning that she had not gotten off returned to his home three miles distant.

The remainder of the complaint is as follows: "That upon arriving at said station of Green Pond, and while leaving the cars thereat, this plaintiff, in the presence of the em-

ployees of the defendant company at the depot of said station, was surrounded by a drunken crowd of colored people, who violently pushed and jolted her and abused her with menacing speeches, using profane, violent and obscene language, and that one of the employees of the defendant company ran off, telling plaintiff that he was going for his pistol in order that he might protect this plaintiff, and at the same time leaving her alone in the midst of a great throng of negroes and never returned, and plaintiff was carried to a house a distance of at least two hundred yards by a colored woman, where the plaintiff begged to be cared for during the night and was given lodging.

"That as a result of the wanton, gross and reckless conduct of the defendant, Atlantic Coast Line Railroad Company, utterly disregarding the rights of the plaintiff in wantonly and recklessly carrying plaintiff by the station for which her ticket called, and to the station at which she requested to be put off, without so notifying her or without giving any of the notices usually given of the arrival of trains at said station informing passengers of their destination, and in not protecting plaintiff from the indignities placed upon her after her arrival at Green Pond depot, from Yemassee, or by not taking her to some place of safety for the night, thereby causing great mental and nervous shock and anxiety, to this plaintiff's injury and to her damage ten thousand dollars. Wherefore plaintiff prays judgment for the sum of ten thousand dollars damages and costs."

The jury within a few minutes after leaving their seats rendered a verdict for ten thousand dollars. A motion for a new trial was made and refused.

The Court, after instructing the jury that it was the duty of the railroad company to exercise the highest degree of care to protect a passenger, charged that a passenger, after having reached his destination, is a passenger until he has had a reasonable time to get away. It is contended that this instruction was erroneous in view

of the fact that the *gravamen* of the complaint was for fail-ure to protect from indignities placed upon her by third persons after she left the car at her destination, and that it should have been qualified so as to subject the carrier to the highest degree of care to protect a passenger from third persons on the station premises when the carrier had reason-able ground to apprehend such danger.

The charge was correct as a general proposition. but as applied to the particular case in hand it was incorrect and misleading.

When one is on the carrier's station premises with a *bona fide* purpose of becoming a passenger, within a reasonable time before the departure of the train to be boarded, he is entitled to protection as a passenger. *Johns* v. *Railway Co.,* 39 S. C., 162, 17 S. E., 698; *Holcombe* v. *Railway Co.,* 66 S. C., 10, 44 S. E., 68.

As a corollary of this rule, when a passenger has reached his destination and alighted from the train he is still entitled to protection as a passenger until he has had a reasonable time to leave the station premises. 4 Elliott on Ry., sec. 1592; *Brunswick, etc., Ry. Co.* v. *Moore* (Ga.), 28 S. E., 1000; *Glenn* v. *Lake Erie, etc., R. R. Co.* (Ind.), 75 N. E., 282. This rule applies strictly when injury results from any instrumentality or agency under the control of the carrier. But when the injury results from the conduct of a fellow-passenger in the course of transportation, knowledge of the existence of the danger or of circumstances from which the danger may have been reasonably anticipated is necessary to fix the liability upon the carrier for damages sustained in consequence of failure to guard against it. *Franklin* v. *Rail-way Co.,* 74 S. C., 340; *Anderson* v. *Railway Co.,* 77 S. C., 436. If this be the rule as applied to an injury from a fel-low-passenger during the course of active transportation, there is quite as great, if not greater, reason for holding such to be the law when the injury is alleged to have re-sulted from strangers upon the station premises.

It is further contended that there should be a new trial (1) because the complaint was solely for vindictive damages and there was no evidence to sustain such action; (2) because the verdict is so manifestly against the evidence and excessive that it was an abuse of discretion to refuse a new trial; (3) because defendant was prejudiced in the trial by the absence of a material witness, defendant's motion for continuance for that cause having been refused.

As this Court has no jurisdiction to reverse a judgment on the ground that it is excessive and as motions for a continuance are within the discretion of the trial Court, except in rare cases, we will not further notice the second and third grounds of objection.

But after a painstaking examination of the testimony we fail to find even a *scintilla* of evidence to support such a verdict. A *scintilla* of evidence is any material evidence that if true would tend to establish the issue in the mind of a reasonable juror.

The complaint is for wilful misconduct and it is essential that there be evidence of wantoness or wilfulness as alleged. Notwithstanding the positive statement of the conductor that he called the Green Pond station twice, on this inquiry we must accept as true the statement of the plaintiff and her two friends with whom she was conversing as the train passed Green Pond, that they heard no such call and that none was made.

According to the plaintiff's testimony, when the conductor was informed that she had been carried by her station, the conductor stated that he had helped an "old lady" or "a crippled lady" off at Green Pond and had forgotten her. The undisputed evidence showed that the train was the Sunday excursion train from Charleston to Savannah, and on this occasion there were eight coaches, three for white passengers and five for colored passengers, the regular conductor, Captain Symmes, being in direct charge of the coaches for colored passengers, and Captain Seyle as assist-

ant conductor, being in charge of the coaches for white passengers, in one of which plaintiff rode. The coaches were crowded with passengers. The train reached Green Pond at 9:27 p. m., made the usual stop, taking on and putting off passengers, among those getting off being an old lady, Mrs. Grant, who was assisted by Conductor Seyle. When the conductor discovered that plaintiff had been carried by her station she was assured that she would be returned to Green Pond on the next train. At Yamassee, fourteen miles from Green Pond, she was transferred to train No. 22 from Savannah to Charleston and returned without charge to Green Pond, the train arriving at 10:54 p. m., a delay to plaintiff of only one hour and twenty-seven minutes. The evidence of plaintiff's witnesses shows that plaintiff was treated with every reasonable consideration and courtesy by the agents of defendant while she was on board the trains, except in so far as a breach of duty might be inferred from a failure to call the Green Pond station or notify plaintiff of arrival there. But the only inference possible from facts as stated by plaintiff is that this failure was a mere inadvertence under the stress of the circumstances. The consequences of this failure of duty were not serious, a mere loss of a short time, the inconvenience of extending her trip to Yamassee and back and the anxiety reasonably involved in passing her station under the circumstances. Although the complaint alleged that plaintiff's brother-in-law was at the station to meet her on arrival of train from Charleston and returned home because she did not get off, there was no evidence whatever on that subject. After leaving the train at Green Pond she secured the services of a negro woman, who was in the employ of Mrs. Grant who kept a boarding house, and was escorted to the boarding house where she lodged for the night. There was no evidence that she would have reached her sister's bedside any sooner if she had disembarked at Green Pond on arrival of train from Charleston, and there was no evidence that the failure to leave the train at Green

Pond in the first instance deprived her of any protection she would otherwise have had. The verdict, therefore, should not stand because of any conduct connected with the failure of the conductor to call the Green Pond station. After stating that the conductor introduced her to Mr. Hughes at Yamassee and told her he was the agent at Green Pond, that he would put her in his charge and send her back on the next train, this is plaintiff's version of what took place when she left the train at Green Pond:

"A. We went on the platform together, and there was an abusive crowd of darkies there and they were using awful language, such as I have never heard before, and I hope and pray I never will again, and he just said to them, 'Boys. be quiet, there is a lady here.' Q. Miss Taylor, what happened then, if anything, on the platform? A. He stayed there a short time, sir, and begged me to excuse him, and said he was going to get a pistol and come back and protect me and he left. Q. Where did he go? A. In the office; that is where I think he went. Q. Did you ever see him any more that night? A. I did not. Q. Were you touched in any way by those negroes that night? A. I should think I was. After he left me I was completely unnerved; however, I did try to make my way around the crowd, and the result was I would only catch against the negro men, first one and then another; and that is exactly what I underwent. After being confident, I made my way through the crowd and got a negro woman to carry me to a boarding house. Q. Where? A. To Mrs. Grant's."

There is nothing in this testimony tending to show the allegations of the complaint. No one threatened, abused, molested, assaulted or injured her. She merely touched, "caught against," some of the negro men as she made her way through the crowd at night. There is no suggestion that they purposely subjected her to any personal indignity. The crowd of excursionists and their friends were doubtless noisy; no doubt some of them were more or less intoxicated, and their language was offensive to the plaintiff. The

agent, it appears, endeavored to remedy this, enjoining them to be quiet in the presence of the lady.

Mr. Hughes' version of the matter was not given to the jury, as the defendant was unable to locate him and secure his attendance. Rosa Bailey, an employee of the Mrs. Grant, the boarding house keeper, testified that Mr. Hughes brought plaintiff to her and that she escorted her to the boarding house. The plaintiff, however, testified that this was not so, that she secured the services of Rosa Bailey herself. While plaintiff's version impeaches the courage and chivalry of Mr. Hughes, it makes no case of wanton injury inflicted on her by defendant. It is not the duty of a common carrier to provide escorts for unattended ladies until they leave the station premises. It is the duty of a common carrier when there is reasonable ground to apprehend injury to a passenger by third persons to use the highest degree of care to prevent it. But where no injury has been sustained there is no actionable breach of duty. The complaint alleges merely that the conduct of defendant caused "great mental and nervous shock and anxiety" to plaintiff. There is no allegation of physical or bodily injury. The law in this State does not allow recovery of damages for mental suffering in the absence of bodily injury, except under the mental anguish statute with reference to telegraph companies. *Mack v. R. R. Co.,* 52 S. C., 323, 29 S. E., 905; *Lewis* v. *Tel. Co.,* 57 S. C., 330, 35 S. E. 556.

The judgment of the Circuit Court is reversed and the case remanded for a new trial.

MR. JUSTICE GARY *dissents, and reserves the right to file a dissenting opinion after the Court adjourns.*