8121

HUNTER v. SOUTHERN RY.

1. CARRIER—PASSENGER—PRINCIPAL AND AGENT.—It is the duty of an agent who has authority to sell tickets over a connecting carrier to inform passengers as to connections, and they have the right to rely on the information given them.

2. IBID.—IBID.—WILFULNESS.—Evidence to the effect that a passenger was informed by an agent who sold him a through ticket that he would make connections through, but who neglected to inform him that one of the connecting trains was a Pullman and that the gate-keeper at the Pullman train would not let him enter without a Pullman ticket, will not support punitive damages.

3. IBID.—IBID.—It is duty of one suffering damages from breach of contract to reasonably exert himself to minimize his damages unless there are reasonable grounds for failure to do so. Here it is held the passenger could have avoided the damages of which he complains by buying a Pullman ticket for $5.00, as suggested by an agent of the carrier, and his recovery is limited to that amount.

Before ERNEST MOORE, Special Judge, Lancaster, Fall term, 1910. Reversed.

Action by John Hunter against Southern Railway Company. Defendant appeals.

*Messrs. B. L. Abney* and *McDonald & McDonald,* for appellant. *Messrs. McDonald & McDonald* cite: *The ticket sold here does not create a joint liability:* 21 S. C. 35; 38 S. C. 431; 80 S. C. 139. *Representations of agent do not amount to guarantee:* 71 S. C. 532; 33 N. E. 273; 70 Mo. 672; 1 Elliott on R. R., sec. 303. *Punitive damages*

*are not recoverable here:* 2 Fet. on Car. 1350; 35 S. C. 475; 62 S. C. 270; 69 S. C. 434.

*Mr. J. Harry Foster,* contra, cites: *Authority to sell shows authority to represent:* 69 S. C. 327; 35 L. R. A. 600; Red. on Ry., sec. 201; 4 Am. R. 588. *Scope of agent's authority:* 37 S. C. 377; 58 S. C. 143; 67 S. C. 391; 37 S. C. 198; 3 S. C. 9; 77 S. C. 546. *Declarations of agent competent:* 82 S. C. 467; 79 S. C. 288, 447; Elliott, secs. 213, 214; 72 S. C. 124; 65 S. C. 156; 41 S. C. 325; 65 S. C. 146; 79 S. C. 450; 81 S. C. 451. *Declarations of agent responsive to allegations:* 80 S. C. 42; 61 S. C. 334; 60 S. C. 390; 70 S. C. 10. *Carrier must give information:* 53 S. C. 210; 62 S. C. 138; 41 S. C. 410; 69 S. C. 133; 75 S. C. 142; 48 S. C. 174; Hutch., sec. 1067; 75 S. C. 142; 81 S. C. 323; 71 S. C. 447. *Parol evidence admissible to show what the contract was:* 86 S. C. 518; 88 S. C. 7; 69 S. C. 330; 65 S. C. 523; 71 S. C. 448. *Relation of Pullman train to the public:* 83 S. C. 453.

March 6, 1912.   The opinion of the Court was delivered by

MR. JUSTICE HYDRICK.   The plaintiff, who is sheriff of Lancaster county, went to Chester, Pa., to get a prisoner and bring him to this State.   He carried a guard with him. On arriving at Chester, he went to the office of the Pennsylvania Railroad Company, and told the ticket agent who he was, where he was from, and what his business was, and that he wanted to go back on the first train that would carry him through to Charlotte; that he felt satisfied that (in getting back to Lancaster) he would have to change at Charlotte, and knew he would have to change at Rock Hill; but that he wanted tickets through to Lancaster, if possible; that he did not want to lie over anywhere,—that

if he had to lie over, he would rather stay in Chester, until he could get a through train. The agent looked over his time-tables, and told plaintiff he could sell him tickets to Lancaster, and that he could take a train at 6:03 that afternoon, and go right through. Plaintiff bought the tickets, and the agent said to him: "Be on time. The train flies. Come here and I will tell you how to go out to the train," and he did so. By mistake, plaintiff took a train that stopped at Wilmington, Del. The train which he should have taken was following, and he got on it at Wilmington and was carried to Washington without further trouble. He arrived at Washington at 9:25 p. m., and was informed that that train did not go further south, and that he would have to change and take a train on the Southern Railway for Charlotte. The Southern train was then standing in the station, and was due to leave for Charlotte at 10:45 p. m., but this train was composed entirely of Pullman cars. Plaintiff went into the station for some purpose, and on attempting to pass through the gates to go to the train, the gatekeeper, on examining his tickets, informed him that he would have to get Pullman reservations. Plaintiff informed him that the agent at Chester had told him that his tickets would carry him straight through, and that he was entitled to be carried on that train. The gatekeeper, however, refused him admittance, without Pullman tickets, telling him that he could get tickets for two berths at a cost of $5.00, which would entitle the whole party, consisting of plaintiff, his assistant and prisoner, to be carried on the Pullman train. Plaintiff refused to pay the extra charge, and returned to the waiting room, where he sat up all night, and until 9 o'clock the next morning, when he took the next train for Charlotte. Plaintiff actually lost no time in his arrival at Lancaster on account of the delay in Washington. In other words, he arrived at Lancaster on the same train he would have gotten there on, if he had been allowed to go aboard the Pullman train in Washington.

Therefore, the damage and inconvenience of which he complains consisted in his having to sit up all night in the waiting room at Washington. He brought this action to recover damages—actual and punitive—for the alleged negligent and wilful conduct of defendant, through its agents and servants, in failing to give him correct information as to his journey and in refusing to allow him to enter the Pullman train and be carried thereon, without the payment of extra fare. Under the rulings and charge, plaintiff recovered judgment for $500, actual and punitive damages.

The exceptions questioning the rulings of the Court below in admitting evidence of the conduct and statements of the agent at Chester, Pa., who sold plaintiff the tickets, cannot be sustained. It was admitted by defendant that the agent at Chester was its agent for the purpose of selling the tickets, but it denied that he had any authority to do more, and contended that any statements or declarations made by him to plaintiff as to his making a through trip were incompetent, because he had no authority to make them.

It is the duty of a carrier, through those whom it has authorized to sell tickets over its lines, to give its passengers such instructions and information as may be necessary for them to pursue their journey in comfort and safety and with dispatch, and the passenger has the right to rely upon the instructions and information given by such agents, acting within the scope or apparent scope of their authority. *Smith* v. *Ry.*, 88 S. C. 421; *Gillman* v. *R. R.*, 53 S. C. 210, 31 S. E. 224.

The exceptions which impute error in submitting the issue of punitive damages to the jury must be sustained. We have examined the record with care, and we find no testimony which warrants a verdict for punitive damages. No reasonable inference can be drawn from the testimony that the agent at Chester acted recklessly, wilfully or wantonly. On the contrary, he was

courteous and polite to plaintiff, and volunteered to give him information and to show him how to get out to his train. From what took place between them, as detailed by plaintiff, it might be inferred that the agent inadvertently failed to find out that plaintiff would have to change cars at Washington, and also that he inadvertently neglected to inform plaintiff that the train from Washington to Charlotte was composed entirely of Pullman cars,—and that he would have to pay extra fare thereon for Pullman accomodations. But the failure to give this information warrants no more than an inference of negligence; and even as to that, there is room for serious difference of opinion; because plaintiff himself said that nothing was said about Pullman cars, or Pullman reservations. The agent might very naturally have supposed that plaintiff knew, as every one who has had any experience in travel does, and as plaintiff admitted he did know, that the accommodations and conveniences of Pullman cars cannot be had without the payment of extra fare. Nothing was more natural than for him to have supposed that plaintiff, occupying the position which he did, not only knew this, but that he would also want such accommodations on such a long journey,—especially as he had expressed the desire to go straight through. So that it is not surprising that the agent did not mention to plaintiff the fact that the train from Washington to Charlotte was made up entirely of Pullman cars. In fact, the agent testified that if plaintiff had asked him, he would have told him that the train from Washington to Charlotte was a solid Pullman train, and that he would have to pay extra for Pullman fare thereon; but that he took it for granted that, traveling at night, plaintiff wanted to use the Pullman cars. The tickets were what the agent represented them to be—good for through railroad fare from Chester to Lancaster, and they were good for his railroad fare on the Pullman train which plaintiff wanted to take. There was nothing in the conduct of

the gatekeeper at Washington which indicates indifference to plaintiff's rights. On the contrary, the gatekeeper, in order to save him trouble and inconvenience of having to wait for another train, suggested the very course which reasonable prudence would have dictated to avoid the same, to wit, to pay the extra fare and proceed on his journey. In refusing plaintiff admittance to the train, he did no more than his duty in carrying out a reasonable rule of the company.

This Court has frequently said that the law will not presume wilful violations of duty. The rule of conduct between men, in their dealings, is that of courtesy and due consideration for the rights of each other. Therefore, when one alleges that his rights have been wilfully invaded, the burden is upon him to prove it. To sustain such a charge, reason and justice demand something more than mere surmise, conjecture or caprice. *Taylor* v. *R. Co.,* 78 S. C. 552, 59 S. E. 641; *Crosby* v. *R. Co.,* 81 S. C. 24, 61 S. E. 1064; *Baker* v. *Tel. Co.,* 84 S. C. 477, 66 S. E. 182.

We next consider what damages the plaintiff is entitled to recover. The rule is well settled, and it is supported by reason and the great weight of authority, that the duty rests upon one who is injured by the breach of a contract or the mere negligence of another to reasonably exert himself to avoid and to lessen the damages resulting therefrom; and such damages as may be avoided by the exercise of reasonable efforts, care and prudence on his part cannot be said to be the proximate result of the other's delict. Therefore, there can be no recovery for damages which might have been avoided. The efforts required of the injured party must be determined by the rules of common sense and fair dealing, and they include a reasonable expenditure of money. Of course, if the person whose duty it is to make such effort show reasonable grounds for his failure to do so, the rule

must not apply.  8 A. & E. L. (2 ed.) 605; *Willis* v. *Tel.
Co.,* 69 S. C. 539, 48 S. E. 538; *Carter* v. *Ry.,* 75 S. C.
355, 55 S. E. 771; *Campbell* v. *Ry.,* 83 S. C. 451, 65 S. E.
628, and cases cited.  It appears from the undisputed evi-
dence that plaintiff could have averted all the damages and
inconvenience which he alleges that he sustained by the
payment of $5.00 for the Pullman accommodations, and
the fact that he could do so was called to his attention by
the gatekeeper at Washington.  He presents no reason
whatever why he did not do so, except that he preferred
to stand upon his rights under the law.  Therefore, the
plaintiff was entitled to recover no more than the sum of
$5.00.

The judgment of this Court is that the judgment of the
Circuit Court be reversed, unless the plaintiff remit all of
the verdict in excess of $5.00, within twenty days after
notice of the filing of the remittitur herein in the Circuit
Court.

MESSRS. CHIEF JUSTICE GARY *and* JUSTICE WOODS *only
participated in this opinion and concur.*