15612

LLEWELLYN v. ATLANTIC GREYHOUND CORPORATION

(28 S. E. (2d), 673)

158

July, 1942.

*Mr. N. A. Turner,* of Columbia, S. C., and *Mr. G. Badger Baker,* of Florence, S. C., Counsel for Appellant,

*Messrs. Willcox, Harlee, Houck & Wallace,* of Florence, S. C., Counsel for Respondent,

January 18, 1944.

The Unanimous Opinion of the Court was delivered by CIRCUIT JUDGE WM. H. GRIMBALL, ACTING ASSOCIATE JUSTICE:

This is an appeal from a judgment entered on a verdict for $50.00 actual and $350.00 punitive damages.

The suit was brought for certain negligent and willful acts alleged to have been committed by appellant in connection with a bus trip made by respondent as a passenger from Durham, N. C., to Sloan's Store, S. C., on May 29, 1942.

At the close of all the testimony appellant moved for a directed verdict; for peremptory instructions to the jury on the issue of punitive damages, and, after the verdict, for a new trial or for judgment *non obstante* as to punitive damages;—all of which were refused by the trial Judge.

The questions involved in this appeal are as to the correctness of the action of the trial Judge on the foregoing motions, and also to certain rulings made in the course of the trial, and as to his charge to the jury.

The facts appear to be as follows:

At 2 o'clock p. m., on May 29, 1942, respondent, with a five-year-old child, entered upon a journey by bus from Durham, North Carolina, to Sloan's Store, South Carolina.

She was going to see her father, who was ill, and had arranged to have someone meet her at Sloan's Store, which was a country store and not a regular bus stop. Before buying her ticket she informed the ticket agent in Durham of the purpose of her trip and inquired as to the schedule. She was told that according to the schedules the bus leaving Durham at 2 p. m. (which was the one she took) was due at Sumter at around 9 o'clock, and at Columbia at 10 o'clock the same day, and that as there was no published rate to Sloan's Store it would be cheapest for her to buy a round-trip ticket to Columbia and have the bus driver put her off at Sloan's Store, rather than buy a round-trip ticket to Sumter and then pay the regular rate from Sumter to Congaree and from Congaree back to Sumter;—Congaree being the nearest bus station to Sloan's Store. She was also told that she should tell the bus driver to put her off at Sloan's Store and that he would do so.

The trip from Durham to Florence, S. C., was made in a bus of the Queen City Coach Company. At Florence respondent transferred to a bus of the appellant, and it was in buses of this company that the remainder of the trip was made. According to the schedule there were two transfers to be made;—one at Florence and another at Sumter.

On arrival at Sumter respondent was told to transfer to the Columbia bus which was waiting. When she and her child reached that bus in front it was already full, and she was told by that bus driver that she could not get on that bus, but that another bus would be coming right behind, which she could take. The next bus did not leave Sumter until 45 minutes to one hour after the first bus, and consequently respondent did not arrive at Sloan's Store until about 10:30 p. m., at which time the party who was to meet her had left and there was no one around. She did not get off the bus herself, but the bus driver pulled up and flashed his flashlight around and told her that there was no one there. Respondent therefore remained on the bus, as her

father's home was some distance from Sloan's Store, and went to Columbia where she arrived at about 11 p. m. There she remained in the bus station for about 15 or 20 minutes, and then went out and after some difficulty and delay engaged a taxicab and drove out to her father's home, where she arrived about 1 o'clock.

At about 11 :15 p. m., the party who had gone to Sloan's Store to meet respondent, telephoned the bus station in Columbia and asked that they page respondent in order to relieve her mother's mind, and was told that this had been done, and that respondent was not in the station. Respondent did not, however, know anything about this telephone call until she reached her father's home.

Respondent testified that as a result of her experience she was thrown into a highly nervous and hysterical condition, and by her suit claimed both actual and punitive damages for this as well. as for mental anguish and her expenses.

. There is some conflict in the testimony as to the time at which the bus on which respondent traveled left Sumter and arrived in Columbia, but as a verdict was rendered in favor of respondent we must accept the testimony most favorable to her.

Within three days after the bus trip respondent sent to appellant the following letter :

"Congaree, S. C., June 1, 1942.

Mr. G. H. Fulcher,
Atlantic Greyhound Lines,
Columbia, S. C.
Dear Mr. Fulcher :

An official of the Columbia Bus Terminal referred me to you regarding a bill for Five Dollars that I feel the Bus Company owes me.

On Friday, May 29, I bought a ticket to Columbia in Durham, N. C., with the understanding that I could get off the bus between Sumter and Columbia—they gave me the time that the bus should reach 'Stone's Store,' and I wired my

family to meet me then. Upon arriving in Sumter, we changed busses and the driver refused to let me get on the regular bus because I'd have to stand up due to crowded conditions. I explained to him that my family would meet the regular bus. He assured me that the second bus would come on immediately and left me to take one that left forty-five minutes later. As I had predicted, when it arrived at Sloan's Store, my family had left, and I was forced to go on to Columbia—not being able to walk the two miles to Congaree at ten-thirty P. M., with a heavy suit case and a five year old child. As I had been called home because my father was not expected to live, I felt impelled to get here as soon as possible and hired a taxi to bring me back at a cost of Four Dollars—more than my fare from Durham to Columbia. Members of my family had gone to the additional expense of long distance calls to Florence and Columbia to try to locate me—which was more than a dollar.

I have used the buses extensively and have, previous to this, been very much pleased with the treatment I've received. I trust that you will see fit to reimburse me for the Five Dollars that I can ill afford to lose.

Respectfully yours,

Grace Weston Llewellyn

(Mrs. W. H.)

1103 Englewood Ave., Durham, N. C."

To this letter respondent received the following reply:

"Atlantic Greyhound Corporation,

Columbia, South Carolina,

June 6, 1942.

Mrs. W. H. Llewellyn,

1103 Englewood Avenue,

Durham, N. C.

Dear Mrs. Llewellyn:

I am in receipt of your letter of June 4, concerning your trip on May 29. It will be appreciated if you will furnish

me with your departure time out of Durham, the arrival time in Sumter, and the departure time out of Sumter.

This information is necessary so that I can complete my investigation with reference to this matter. Just as soon as my investigation is completed, I will let you hear further from me with reference to this.

Yours very truly,

G. H. Fulcher, Supervisor."

To this letter of June 6th respondent did not reply. And on June 10th she commenced this suit for $3,000.00 actual and punitive damages.

The first exception charges error in not admitting in evidence the whole of respondent's letter of June 1st;—within three days after the occurrences which gave rise to this lawsuit. The trial Judge held that certain portions of the letter constituted an offer of settlement, and that for this reason the letter was inadmissible as a whole. Appellant declined to put in only portions of the letter.

In not admitting the entire letter of June 1st it seems that the trial Judge committed error. It was an *ante litem motam* letter, written within three days after the bus trip, and simply presents a claim for a definite sum as expenses incurred in connection therewith, and sets out the facts on which the claim is based. It was related to the matters in issue and was in part at 'variance with the testimony as given by respondent in her direct examination. As a declaration against interest the entire letter was competent to go to the jury along with the other testimony in the case and should have been admitted in evidence after being identified by respondent as it was. Appellant was clearly prejudiced by the refusal to admit the entire letter.

The voluntary declarations or admissions of a party to a civil suit against his interest are clearly receivable in evidence. *McGahan v. Crawford,* 47 S. C.,

566, 25 S. E., 123; *Allen Bro. & Co. v. Burnett,* 92 S. C., 95, 75 S. E., 368.

The next exception charges error in that the jury were not given appropriate instructions as to when the relationship of carrier and passenger ended. This exception is apparently based on a misapprehension of the charge. The trial Judge specifically charged that the action was for damages for the negligent and willful acts of appellant on a trip made by plaintiff from Durham, N. C., to a point in South Carolina known as Sloan's Store near Congaree, South Carolina, thus clearly and correctly indicating that the contract of carriage ended when the bus in which respondent was travelling arrived at this point. While some confusion may have arisen in the trial due to the fact that in order to save money, respondent had purchased a round-trip ticket to Columbia, the actual contract of carriage made when the ticket was purchased was to transport the passenger from Durham, N. C., to Sloan's Store, S. C. Whatever took place after the bus carrying respondent arrived at Sloan's Store had relation to the injuries and damages claimed to have resulted from the alleged negligent and willful conduct of appellant in performing its duties in the transportation of respondent to Sloan's Store.

If appellant had desired further instructions as to the relations existing after Mrs. Llewellyn arrived at her destination and the respective duties of the parties concerned to each other, this should have been requested. Before closing his charge the trial Judge asked if anything further was desired, and was told that there was not. *Williams v. Southeastern Life Ins. Co.,* 197 S. C., 171, 14 S. E. (2d), 895.

The next exception is based on the failure of the trial Judge to refer to the rules of the Public Service Commission concerning the taking of additional passengers on a loaded bus. So far as the record shows no ref-

erence was made at the trial to the rules of the Public Service Commission, and their relevancy or admissibility, in an action involving interstate carriage of passengers by bus, was not considered or passed on. It is therefore not properly before this Court for consideration. *Medical Society v. South Carolina Nat. Bank,* 197 S. C., 96, 14 S. E. (2d), 577.

Exception is taken to the action of the trial Judge in striking from the record the testimony of a witness named L. Roe. We find no reversible error in this even if there was any error, as the testimony of this witness threw no light whatever on the matters in controversy.

The next two questions on this appeal relate to the refusal of the trial Judge to direct a verdict for appellant as to both actual and punitive damages and to his refusal either to direct a verdict or to grant a new trial as to punitive damages.

As the case concerns an interstate journey the Motor Carrier Act of Congress of 1935 controls as far as may be applicable. By this act matters involving rates, fees and charges imposed by regular motor carriers of interstate passengers have been made subject to Federal control, and any preferences or advantages allowed to any particular person in connection with these matters are declared to be unlawful. 49 U. S. C. A., §§ 302, 316.

Congress did not however by the Act take over the regulation of interstate carriers by motor bus to anything like the extent that it has with reference to interstate carriers by railroad. In matters relating to safety problems and to the protection of the traveling public State regulations of intrastate commerce have not been superseded. *Maurer v. Hamilton,* 309 U. S., 598, 60 S. Ct., 726, 84 L. Ed., 969, 135 A. L. R., 1347; *Eichholz v. Public Service Commission,* 306 U. S., 268, 622, 59 S. Ct., 532, 83 L. Ed., 641; *Thompson v. McDonald,* 305 U. S., 263, 59 S. Ct., 176, 83 L. Ed., 164.

We do not understand that any special contract is claimed to be predicated on the advance information given by respondent to the ticket agent in Durham as to the purpose of her trip, nor as to her plans for being met at her destination, so that no special question is involved concerning the interstate nature of the journey.

Whether travelling as an interstate or as an intrastate passenger, respondent was entitled to receive the same treatment—the highest degree of care for her safety and comfort. It is the failure to perform this duty which is the basis of this action and to which we shall now address ourselves.

The occurrences subsequent to the arrival of respondent at her destination at Sloan's Store constitute the elements of damage relied on, both as the natural result of the alleged negligent acts and as aggravating the original misconduct. They do not constitute the cause of action.

It is well established that in the performance of its obligations to a passenger it is the duty of a carrier to transport its passengers promptly as well as safely. It is for this reason that common carriers are required to issue timetables containing schedules, which it is their duty to seek to maintain. Where there is evidence of a long delay in making schedule connections a presumption of negligence arises, and it is then incumbent on the carrier to show that such failure was not the result of negligence. *Mulligan v. Southern Ry.*, 84 S. C., 171, 65 S. E., 1040; *Taber v. Seaboard Air Line Ry.*, 81 S. C., 317, 62 S. E., 311; *Miller v. Southern R. Co.*, 69 S. C., 116, 48 S. E., 99.

The maintenance of schedules is not however required to be guaranteed, and passengers take passage subject to such delays as are not due to negligence or willfullness. *Ibid.*

In the present case no question arises concerning the guaranteeing of schedules, as respondent neither claims nor does the evidence tend to show that any assurances were given as to the time of arrival of respondent at her destination. In fact the destination was not a regular bus station, and no schedule was given as to the time of arrival there.

However, there was a delay, and under the peculiar facts of this case a delay which might be regarded as unreasonable. The respondent had been told that another bus would follow right behind the bus which was full, and that she could get a seat on it. It is true that the delay here of forty-five minutes to one hour would under many conditions not constitute a long delay, and under a different state of facts might not even be considered as raising a presumption of negligence. In the present case, however, we think it was for the jury to say whether under all the circumstances of the case the appellant was negligent in failing to transport respondent promptly to her destination.

We find however no evidence on which to sustain the judgment for punitive damages. While negligence will be presumed from a long delay, no presumption of willful conduct can arise from that fact. As is said in the case of *Mulligan v. Southern Ry., supra* [84 S. C., 171, 65 S. E., 1042], "The very fact that long delay in making schedule warrants the presumption of inadvertent negligence excludes the presumption of wilfulness, for two contrary presumptions will not arise from the same fact."

Where willful misconduct is alleged it is essential that there be evidence of wantonness or willfullness. The law will not presume willful conduct. *Hunter v. Southern Ry.*, 90 S. C., 507, 73 S. E., 1017; *Taylor v. Atlantic Coast Line R. Co.*, 78 S. C., 552, 59 S. E., 641; *Crosby v. Seaboard Air Line Ry.*, 81 S. C., 24, 61 S. E., 1064;

*Baker v. Western Union Tel. Co.,* 84 S. C., 477, 66 S. E., 182, 137 Am. St. Rep., 848. Here the charge of willful and reckless conduct is based on the refusal of passage to respondent on the already filled bus, and on the fact that, after being informed by the bus driver that another bus on which she would get a seat would follow right behind his bus, she was delayed for approximately an hour.

As to the refusal to permit respondent to ride on a ██ bus which was already full, it is one of the obligations of a carrier of passengers to furnish seats for their safety and comfort, the failure to do which without reasonable excuse will of itself render it liable for damages. *Cave v. Seaboard Air Line Ry.,* 94 S. C., 282, 77 S. E., 1017, L. R. A., 1915-B, 915, 1 Ann. Cas., 1915-A, 1065; *Talbert v. Charleston & W. C. R. Co.,* 97 S. C., 465, 81 S. E., 182. An effort to fulfill this obligation could scarcely be considered either negligence or willfullness. The fact that respondent expressed a willingness to stand up and thus waive her right to a seat could not make it an act of negligence or willfullness for the carrier not to accept her offer, as of course it had also to consider the safety and the comfort of the other passengers in the bus. *Carter v. Southern Ry.,* 75 S. C., 355, 55 S. E., 771.

As to the statement of the bus driver that another ██ bus would follow right behind the one on which respondent was refused passage because it was full, this was information which respondent as a passenger was entitled to receive and to rely on. *Hunter v. Southern Ry.,* 90 S. C., 507, 73 S. E., 1017. The fact however that it was inaccurate would not indicate any reckless disregard of respondent's rights. There is nothing to show that the bus driver knew or had reason to believe that there would be a delay of 45 minutes to an hour. There was no evidence of rudeness or disrespect, but on the contrary the bus driver indicated an interest in affording respondent the comfort

of a seat instead of standing up. Information given by an employee, though erroneous, will not support a verdict for punitive damages unless shown to be intentionally or recklessly made. *Black v. Charleston & W. C. R. Co.,* 87 S. C., 241, 69 S. E., 230; *Fort v. Southern R. R.,* 64 S. C., 423, 42 S. E., 196; *Aaron v. Southern Ry.,* 68 S. C., 98, 99, 46 S. E., 556; *Murrell v. Charleston & W. C. R. Co.,* 115 S. C., 228, 105 S. E., 350.

On arrival at her destination every courtesy appears to have been extended to respondent. According to her testimony she did not alight, but the bus driver undertook to ascertain for her that there was no one there to meet her by using his flashlight, and she then proceeded to Columbia, as she had a right to do.

In passing upon the occurrences after the arrival of respondent at her destination they must be considered in the light of the salutary rule that a passenger claiming damages for delay must use all reasonable means to minimize her damages. *Carter v. Southern Ry.,* 75 S. C., 355, 55 S. E., 771; *Hunter v. Southern Ry.,* 90 S. C., 507, 73 S. E., 1017; *Harper v. Western Union Tel. Co.,* 133 S. C., 55, 130 S. E., 119, 42 A. L. R., 286; *Campbell v. Seaboard Air Line Ry.,* 83 S. C., 448, 65 S. E., 628, 23 L. R. A. (N. S.), 1056, 137 Am. St. Rep., 824; *Burkhalter v. Townsend,* 139 S. C., 324, 138 S. E., 34.

It is evident in the light of this rule that appellant cannot be held responsible for the inconveniences to which respondent was subjected in finding a taxicab to drive her to her father's home, nor for the worries and inconveniences occasioned by the trip in the taxicab. When she failed to meet her friends at Sloan's Store respondent was carried of her own volition to Columbia, and so far as appellant knew she might have decided to spend the night there. She could readily have notified appellant's agents that she desired to continue her journey to her

father's home, or asked that something be done for her in her predicament.

No incivility or lack of attention or lack of consideration was shown her during the time she remained in the station, nor does it appear that she was refused any request for assistance. She did not communicate with any representative of the appellant. Nor did she let them know that she was still in the station, or wanted to proceed on that night to her father's home, nor otherwise inform them of her wishes or intentions.

We do not think that the telephone call from Mrs. McCullough constituted any notice to appellant that respondent might still be in the station, as Mrs. McCullough knew nothing of her whereabouts herself, and whether or not respondent was paged is too remote and speculative to be entitled to consideration as a natural or proximate or direct result of the delay.

Nor does it appear that respondent was exposed to any unusual conditions such as rain or cold, nor that anything untoward happened during her drive in the taxi from Columbia to Sloan's Store;—a distance of approximately fifteen miles;—which was something she had undertaken of her own free will. *Taylor v. Atlantic Coast Line Ry., supra. Crosby v. Seaboard Air Line Ry., supra.*

Whatever actual damages were the natural, direct and immediate result of the negligence of appellant may be recovered upon proof of the charge of simple negligence. Remote or speculative damages are, of course, not recoverable.

As to punitive damages the trial Judge was in error in not directing a verdict for appellant.

Reversed and remanded for a new trial.

Mr. Chief Justice Baker, Messrs. Associate Justices Fishburne and Stukes, and Circuit Judge L. D. Lide, Acting Associate Justice, concur.