15752

JOHNSON v. METROPOLITAN LIFE INSURANCE CO.

(34 S. E. (2d), 757)

*Messrs. McLain & Elliott* and *W. P. Donelan,* all of Columbia, Counsel for Appellant,

*Messrs. Gary Paschal* and *John W. Sholenberger,* both of Columbia, S. C., Counsel for Respondent, ▮▮▮▮▮▮▮

July 18, 1945.

MR. ASSOCIATE JUSTICE STUKES delivered the majority Opinion of the Court.

Capital Motors, Inc., was engaged in the sale, repair, etc., of automobiles in Columbia and its place of business was destroyed by fire on February 13, 1942. Eubert Y. Johnson was a motor mechanic in the employ of the corporation and continued in its work of salvage for a few days afterward. An entirely unconnected, but similar, concern, Central Chevrolet Company, whose salesroom and garage was in the neighborhood, kindly loaned Capital Motors, Inc., office space in which to wind up its affairs. Some of the mechanics formerly employed by the latter went over to the employ of the Central Chevrolet Company.

Capital Motors, Inc., procured for its employees protection under a group life insurance policy, obtained by General Motors Corporation, the manufacturer of the motor vehicles which Capital Motors, Inc., was engaged in selling, and the employer reported monthly the names of the employees covered, those released from coverage and those added, and paid the premiums of the ones subject to the insurance. Johnson was given a certificate of his participation and protection in this insurance, dated as effective July 1, 1938, and the plaintiff in this action, his wife, was named as beneficiary. She brought suit as such, alleging the death of the insured when the policy was in effect as to him.

The answer made the issue which controls, that the death occurred after the termination of the policy insofar as the deceased was concerned. Motion for directed verdict was made upon that ground, among others, and we think it should have been granted, hence this judgment need deal with no other issue. The trial Judge was inclined to such view and frankly said to appellant's counsel during the argument, contained in the record: "Personally I am inclined to agree with you, but under the rule I will have to submit that question to the jury." And he instructed them in part as follows: "So, you are limited, as I understand, to that simple issue. If at the time of his death he had been away from Capital Motors for more than 31 days, if he was not an employee of that particular corporation for more than 31 days before his death, then the plaintiff could not recover."

Respondent testified for herself and offered in evidence the certificate of insurance. Liability upon the insurer was conditioned in the latter as follows: "If death occur while the employee is in the employ of such distribution unit of the employer, or within 31 days after termination of employment. * * *" She testified on direct examination that her husband moved with Capital Motors, Inc., to Central Chevrolet Company and continued to work with the former until March 27, 1942, when he quit and went to work at Fort Jackson where he was killed by accident on April 13th. Because respondent's case depended upon her testimony alone, the cross examination is set out in full below.

"Q. Mrs. Johnson, did you ever see your husband's pay checks after the fire? A. Yes, sir.

"Q. How long was he paid by the Capital Motors, Inc., after the fire? A. Until March 27th.

"Q. Mrs. Johnson, I mean Capital Motors' checks. As a matter of fact, wasn't the last check he got from Capital Motors dated February 20th and then on he was paid by

Central Chevrolet Co.? A. He was paid by Capital Motors.

"Q. Up to February 20th he was paid by Capital Motors? A. Up to March 27th.

"Q. You konw there are two concerns. There was Capital Motors at the corner place on Gervais and Marion Streets and that burned down and just after that he helped with the salvage, and wasn't the last time he was paid by Capital Motors, Inc., was February 20th and from then on he was paid by Central Chevrolet Company? A. He was being paid by Capital Motors.

"Q. That is after the 20th of February? A. Yes, sir.

"Q. Did you see the checks? A. He was paid in money. His check was cash.

"Q. You don't know whether he was working for Central Chevrolet after February 20th or not? A. He worked at Capital Motors. He didn't work with Central Chevrolet. He worked for Capital Motors.

"Q. Didn't he work at the Central Chevrolet plant? A. No, sir; not the Central Chevrolet, he did not.

"Q. What is that place between Sumter and Marion Streets? A. I don't know.

"Q. That is the Central Chevrolet place? A. He worked for Capital Motors in the Central Chevrolet building. My husband worked for Capital Motors.

"Q. Do you know that he was working for Capital Motors? A. Yes, I carried him down in the automobile.

"Q. You carried him to Central Chevrolet Co.? A. Yes, that is where the Capital Motors was.

"Q. And that is where he was working? A. Yes, sir."

The foregoing testimony was patently insufficient to raise an issue of fact for solution by the jury in view of the evidence offered by defendant. The latter included a deposition by the associate office manager of the appellant insurer in Detroit, who had supervision of the group policy involved. The insurer's records, in evidence, showed that Capital Motors, Inc., reported for the month beginning March 1, 1942,

that Johnson's participation in the policy ceased on that date and his insurance terminated; no premium was paid for the month of March, the last preceding payment having been made for the month of February, 1942, and remitted during that month. Proper office records were made of the cancellation, which were introduced in evidence.

Another witness for the defendant was the former president and general manager of Capital Motors, Inc., until dissolution of the corporation. He testified from his company's records that the deceased was employed by it and paid through February 19th and thereafter did not work for Capital Motors, Inc.; further that thereafter Johnson was employed by Central Chevrolet Company, with which Capital Motors, Inc., had nothing to do; and the witness was clear that after the date named, February 19th, the Company employed no mechanics, except a Mr. Baker whose title was service manager, and that they undertook no repair work after the fire and, indeed, had no workshop.

Still another witness for the insurer was the young lady bookkeeper of Central Chevrolet Company who had been such for some time, including the period of its employment of the deceased. She testified from her employer's records that Johnson was paid by the Central Chevrolet Company on March 13, 1942, which was for a prior period of approximately a week, and that he worked through March and was last paid on April 3d, and it was during the week including the latter date that the deceased left the employ of Central Chevrolet Company.

"This declaration is but to say that the scintilla of evidence upon which a case should be sent to the jury must be real, material, and pertinent and relevant evidence, not speculative and theoretical deductions." *Turner v. American Motorists Ins. Co.,* 176 S. C., 260, 180 S. E., 55, 57. It is axiomatic that when there is no competent and relevant evidence to sustain an issue of fact, the latter becomes an issue of law, and nonsuit or directed ver-

dict it proper upon timely motion. See the many South Carolina decisions in point in 32 S. E. Dig., Trial, p. 243, Key 142.

Careful consideration of the evidence adduced upon the trial of this case, viewing it most favorably for respondent, leaves no doubt that the lower Court should have directed a verdict for appellant. Hence the relevant exception is sustained and the case is reversed with instruction that the error be corrected by entry of judgment for the defendant.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE and OXNER concur.

MR. ASSOCIATE JUSTICE TAYLOR (dissenting) :

I regret very much finding that I am unable to agree with opinion in this matter and therefore must dissent.

The complaint alleges a cause of action under the terms of a group policy of insurance issued by the appellant to General Motors Corporation affiliated and subsidiary companies, of which Capital Motors, Inc., was a subsidiary company, and for whom the respondent's husband was an employee.

Pursuant to and under the terms of this group policy, respondent's husband, hereinafter referred to as insured, was issued a certificate evidencing the fact that as an employee of the said Capital Motors, Inc., he was entitled to have insurance coverage in the amount of $2,000.00 if death occurred while the employee was in the employ of such distribution unit of the employer, or within 31 days after termination of employment and while the group policy was in force as to such distribution unit. This certificate, naming respondent beneficiary, was issued pursuant to an application therefor made by the insured and forwarded to his employer.

The certificate set forth certain conditions whereby the insurance was effective, and referred particularly and more fully to all of the terms and conditions of the group policy.

The complaint prays for judgment in the amount of $2,-000.00, the face amount of the certificate, and alleges that the insured died while said certificate and group policy were in full force and effect.

In due time appellant answered, pleading as a first defense a general denial and as a second defense, after admitting certain allegations of the complaint, pleads the terms, conditions and provisions of the group policy, with Paragraph 7 reading as follows: "7. Further answering the complaint the defendant alleges that said group policy, and the certificate issued thereunder specifically provide that the life insurance on any employee of any distribution unit of the employer insured under said group shall automatically cease thirty-one days after the date of the termination of his employment in such distribution unit; that the said *Eubert Y. Johnson* died as alleged subsequent to thirty-one days from the date of the termination of his employment with Capital Motors, Inc., a distribution unit of General Motors Corporation, and, therefore, at the time of his death, as alleged, the said Eubert Y. Johnson was not covered under said group policy, his insurace thereunder having expired prior to his death."

The cause came on to be heard before Hon. A. W. Holman and a jury in the Richland County Court on the 14th day of June, 1943. At the close of the evidence the appellant moved for the direction of a verdict. The motion was denied, and the trial Judge submitted the case to the jury who brought in a verdict for the plaintiff in the amount of $2,000.00 with interest.

In due time appellant's motion for a new trial was made, argued, and overruled by the trial Judge. Thereupon the appellant filed a notice of appeal to this Court upon the following exceptions.

"1. His Honor erred in refusing to grant appellant's motion for a directed verdict, the error being that the policy specifically provides that the proceeds shall be payable only

if death occur while the insured is in the employ of Capital Motors, Inc., or within thirty-one days after termination of such employment, and the only inference to be drawn from the evidence is that insured's death occurred subsequent to thirty-one days after he ceased to be employed by such employer.

"2. His Honor erred in refusing to grant appellant's motion for a directed verdict, the error being that no premium was paid for insured's benefit for more than thirty-one days prior to his death, and, therefore, the policy became void and out of benefit, so far as insured was concerned, for failure to make such premium payment.

"3. His Honor erred in refusing appellant's motion for a new trial upon the grounds made under its motion for a directed verdict."

It is admitted that as long as the insured was on the payrolls of the Capital Motors, Inc., deductions were made from his wages for the purposes of paying the premiums.

While arguing against the motion of appellant for a directed verdict counsel stated that it was agreed that only one question was to be determined by the Court and that was whether or not the insured died within 31 days of the termination of his employment by Capital Motors, Inc. In accordance therewith, the trial Judge in overruling the appellant's motion for a directed verdict for the defendant stated that he would submit the case to the jury on that one question and proceeded to do so in his charge, at the completion of which he inquired of counsel for both plaintiff and defendant if there was anything further they wished and both answered in the negative, whereupon Judge Holman concluded his charge in the following words.

"So you are limited, as I understand, to that simple issue. If at the time of his death he had been away from Capital Motors for more than 31 days, if he was not an employee of that particular corporation, for more than 31 days before his death, then the plaintiff could not recover.

"Write your verdict on the back of this paper where I have made a cross mark. If you conclude that the plaintiff is entitled to recover, the form of your verdict will be, 'We find for the plaintiff $2,000.00' writing it in words and not in figures.

"If you conclude that the insured had been out of employment with the Capital Motors at the time of his death for more than a period of 31 days, you would then find for the defendant, and the form of your verdict would be, 'We find for the defendant' and under whatever verdict you find write your name and add the word 'Foreman'.

"You may retire."

The jury found for the plaintiff in the sum of $2,000.00.

In due time appellant's motion for a new trial was made, argued and overruled by the trial Judge.

In view of the foregoing the only question for this Court to decide is whether or not there was sufficient evidence to send the case to the jury as to whether or not the insured at the time of his death had been out of the employ of Capital Motors, Inc., more than 31 days prior. This necessitates an examination of the testimony and in doing so this Court is mindful of the well-settled rule in this State that a scintilla of evidence is any material evidence that if true would tend to establish the issue in the mind of a reasonable juror. The evidence must be real, material, pertinent, and relevant, not speculative and theoretical deductions. *Taylor v. Ry. Co.,* 78 S. C., 552, 566, 59 S. E., 641, 643; *Bushardt v. United Investment Co.,* 121 S. C., 324, 113 S. E., 637, 639, 35 A. L. R., 637; *Turner v. American Motorist Ins. Co.,* 176 S. C., 260, 180 S. E., 55.

The defendant offered very strong evidence to the effect that Johnson was not employed by Capital Motors, Inc., after February 19, 1945, this being substantiated by other witnesses and exhibits for the defendant. However, Mrs. Johnson, the respondent herein, was just as positive in her testimony that the Capital Motors, Inc., building burned

February 13, 1942, and that Capital Motors, Inc., moved their place of business to the Central Chevrolet place, that the insured continued to work with Capital Motors, Inc., there until March 27, 1942, helping with the salvage, that she had occasion to visit him carrying him to his work. On cross-examination she testified to the following:

"Cross-examination by Mr. Elliott:

"Q. Mrs. Johnson, did you ever see your husband's pay checks after the fire? A. Yes, sir.

"Q. How long was he paid by the Capital Motors, Inc., after the fire? A. Until March 27th.

"Q. Mrs. Johnson, I mean Capital Motors' checks. As a matter of fact, wasn't the last check he got from Capital Motors dated February 20th and then from then on he was paid by Central Chevrolet Company?

"A. He was paid by Capital Motors.

"Q. Up to February 20th he was paid by Capital Motors? A. Up to March 27th.

"Q. You know there are two concerns. There was Capital Motors at the corner place on Gervais and Marion Streets and that burned down and just after that he helped with the salvage, and wasn't the last time he was paid by Capital Motors, Inc., was February 20th and from then on he was paid by Central Chevrolet Company? A. He was being paid by Capital Motors.

"Q. That is after the 20th of February? A. Yes, sir.

"Q. Did you see the checks? A. He was paid in money. His check was cash.

"Q. You don't know whether he was working for Central Chevrolet after February 20th or not? A. He worked at Capital Motors. He didn't work with Central Chevrolet. He worked for Capital Motors.

"Q. Didn't he work at the Central Chevrolet plant? A. No, sir; not the Central Chevrolet, he did not.

"Q. What is that place between Sumter and Marion Streets? A. I don't know.

"Q. That is the Central Chevrolet plant? A. He worked for Capital Motors in the Central Chevrolet building. My husband worked for Capital Motors.

"Q. Do you know that he was working for Capital Motors? A. Yes, I carried him down in the automobile.

"Q. You carried him to Central Chevrolet Company? A. Yes, that is where the Capital Motors was.

"Q. And that is where he was working? A. Yes, sir."

Mr. Burke Hood, witness for the defense, who was president of Capital Motors, Inc., at the time of the fire testified that he became ill two or three days after the fire as a result of being in the mud and water and that he remained ill for ten days. Also that he carried Mr. Johnson, along with others, with him to the Central Chevrolet place and that they did salvage work for Capital Motors until February 19, 1942. The fire occurred February 13, 1942, and if Mr. Hood became ill three days afterward and remained so for ten days it was February 26th before he was able to be about his work again. Therefore, if he carried Mr. Johnson there along with others it must have been after this date. This tends to lend strength to Mrs. Johnson's testimony that the insured, Mr. Johnson, worked for Capital Motors until March 27, 1942, which would be within 17 days of his death, it being admitted that he died April 13, 1942.

The writer of the main opinion in this case, I respectfully submit, fell in the error of weighing the testimony. After referring to the testimony of the plaintiff, he uses the following language. "The foregoing testimony was patently insufficient to raise an issue of fact for solution by the jury in view of the evidence offered by defendant." He then proceeds to refer to the highlights of defendant's testimony. This, in my humble opinion, is the weighing of the evidence of one against the other by this Court and therefore invades the prerogative of the jury. Claimant's testimony was, in my opinion, real, material, pertinent and relevant and there-

fore meets the test of the scintilla rule as set forth in *Turner v. American Motorists Ins. Co., supra.*

Reading of the printed page alone, I submit, shows that the defense made out a strong case, but the jury had the added benefit of hearing and observing the witnesses as they testified, and if the jury, who saw the witnesses and heard them testify, chose to believe the plaintiff rather than the witnesses for the defendant on an issue of fact properly submitted, this Court is without right to interfere.

Had the testimony of the plaintiff been undisputed that Johnson worked at Capital Motors until March 27, 1942, and therefore was so employed within 31 days prior to his death, it would have been sufficient as a matter of law to sustain a verdict in her favor, but when the defense offered testimony to the contrary it became an issue of fact for the jury.

The real test is not how the testimony of one litigant compares to the testimony of another, but whether or not under the scintilla rule there is enough evidence to submit to the jury. In this case I am of the opinion there is, and that this Court is forbidden to take upon itself the powers, duties, rights and privileges of a jury. It is well settled that this Court has no power to review or correct the findings of fact in a trial by jury. *Sanders v. Commonwealth Life Ins. Co.,* 134 S. C., 435, 132 S. E., 828, 830; *Anderson v. Aetna Casualty & Surety Co.,* 175 S. C., 254, 178 S. E., 819; Constitution, Art. 5, § 4.